[Cite as *State v. Smith*, 2012-Ohio-3251.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97500

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES C. SMITH

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550060

**BEFORE:** Rocco, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 19, 2012

-i-

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

By:   David M. King
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:   Justin S. Gould
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

**{¶1}** Defendant-appellant James C. Smith appeals from his convictions and the sentences imposed after the trial court found him guilty of two counts of felonious assault with firearm specifications.

**{¶2}** Smith presents two assignments of error. First, he claims his convictions are not supported by the manifest weight of the evidence. Second, he claims that the trial court prior to imposing sentence violated his right against self-incrimination.

**{¶3}** Upon a review of the record, this court finds Smith's claims to be without merit. His convictions and sentences, consequently, are affirmed.

**{¶4}** Smith's convictions result from a shooting incident that occurred on the night of April 7, 2011. According to the testimony of the state's witnesses, the incident unfolded in the following manner.

**{¶5}** Shameka Williams was driving her car westbound on Union Avenue in the city of Cleveland at approximately 10:00 p.m. with her stepbrother David Humphries in her front passenger seat. They were returning to her home from a visit to the liquor store.

**{¶6}** Williams, who was traveling in the right lane, stopped for the traffic light at the intersection of Union Avenue and E. 70th Street. In the left lane, a car stopped next to her for the same light. Williams glanced over at the car and recognized the people inside. Eddrick Ragland was driving, a man she knew as Donzel was sitting in the front

passenger seat, and Smith was in the rear passenger seat. Williams was friendly with the men, so she and Donzel put their side windows down so that they could exchange greetings.

{¶7} The three had spoken for only a short time when Humphries put his seat up from its reclining position. As soon as Humphries became visible to Smith, the two men made eye contact. Smith immediately put his window down, pulled out a gun, and began firing shots at Williams's car. The shots caused two of the windows in Williams's car to explode. At the same time, Humphries screamed at Williams to pull away and she obeyed. As she proceeded down Union, Williams looked in her rearview mirror and observed Ragland's car make a turn onto E. 69th Street.

{¶8} Williams approached Union's intersection with Broadway Avenue to see a police cruiser turning onto Union, so she waved her arm to attract the officers' attention. When they stopped, she and Humphries explained what had just occurred, provided the names of the men in the other car, indicated the shooter's street name was "Dooney," and told the officers the direction in which Ragland had driven from the scene. The officers agreed to investigate. Williams drove home; from there she also called 911 to report the incident.

{¶9} The officers requested the help of the Scientific Investigation Unit ("SIU"). The SIU took photos of the area and of the damage to Williams's car. The officers collected several shell casings from the street and conducted interviews of the victims to include in the police report.

{¶10} The following day, Det. David Sims was assigned to the case. He obtained a formal written statement from Williams. Approximately a month later, both Ragland and Smith were taken into custody; the men also provided written statements to Sims. Smith denied being in Ragland's car and denied taking any part in the incident.

{¶11} Smith and Ragland subsequently were indicted in this case and charged with two counts of felonious assault with firearm specifications. Ragland eventually secured a plea agreement, whereby, in exchange for Ragland's testimony against Smith, the state would dismiss the charges against Ragland.

{¶12} Because Smith signed a jury waiver, his case proceeded to a bench trial. After the state presented its evidence, Smith testified in his own behalf. The trial court, however, found Smith guilty of the charges. The trial court ultimately sentenced Smith to a prison term that totaled nine years.

{¶13} Smith presents the following two assignments of error in this appeal.

**"I. Defendant's convictions for felonious assault were against the manifest weight of the evidence.**

**"II. Mr. James Smith was denied his rights under the U.S. Constitution Fifth and Fourteenth Amendments and Ohio Constitution Article I Section 10 when the court compelled him to make a statement at his sentencing."**

{¶14} In his first assignment of error, Smith asserts that, because Williams and Ragland admitted they had been liars in the past, the manifest weight of the evidence adduced at trial failed to support his convictions. Smith's assertion is without merit.

{¶15} In evaluating a challenge based on manifest weight of the evidence, this court may intrude its judgment into proceedings only that it finds to be fatally flawed through misapplication of the evidence by a trier of fact that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.*

{¶16} In analyzing the evidence, this court must review the entire record, weigh the evidence presented and all of its reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* at 387.

{¶17} In conducting such a review, however, this court must remain mindful that weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus (1967). Therefore, a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offenses beyond a reasonable doubt. *Id.* at paragraph two of the syllabus.

**{¶18}** Both Williams and Ragland provided consistent accounts of the incident. Their accounts found support in the physical evidence that was left at the scene and also was exhibited by Williams's car. Minor variations in their descriptions of what occurred during the incident and afterward did not render their testimony unbelievable; indeed, according to their testimony, they did not know each other well enough to be in collaboration. *State v. Hayes*, 8th Dist. No. 94697, 2011-Ohio-605, ¶ 30.

**{¶19}** Smith's testimony, on the other hand, obviously, was based upon self-interest. His claim that his cousin was the one that went by the street name "Dooney" seemed incredible in light of the fact that he had that name tattooed on his neck. Smith also admitted that, a week before the incident, his mother made a police report on his behalf implicating Humphries had committed an offense against him. Smith could not explain any reason why Williams and Ragland would lie about the incident.

**{¶20}** In short, the record of this case is not one upon which this court can determine the trial court lost its way in finding Smith had committed felonious assault with firearm specifications. *State v. Gardner*, 8th Dist. No. 85275, 2005-Ohio-3709, ¶ 21-24. Smith's first assignment of error, accordingly, is overruled.

**{¶21}** Smith claims in his second assignment of error that the trial court "compelled" him to speak at his sentencing hearing, thereby compromising his right against self-incrimination. The transcript of the sentencing hearing reflects that, after

Smith's defense counsel spoke on his client's behalf and Williams described the effect the incident had on her, the following exchange occurred.

> THE COURT: I appreciate your comments. All right. What do you have to say for yourself, Mr. Smith?
>
> THE DEFENDANT: Nothing, Your Honor.
>
> THE COURT: Nothing. You need to say something.
>
> THE DEFENDANT: I mean, I done wrong. They done wrong to me too. That's how I look at it.
>
> THE COURT: I don't understand why you think that's a good resolution. You could have hit a kid, could have hit her.
>
> THE DEFENDANT: I understand that, but I wasn't shooting at her. I wasn't in my right state of mind at that time that night.
>
> THE COURT: You certainly could have hit her. * * * It was a miracle you didn't hit them. * * * I understand somebody wronged you and you want to get back at them and maybe the law didn't operate in the way that you would be pleased. This is crazy.
>
> THE DEFENDANT: Same way as they could have hit my niece the night that they shot at my house. * * * I understand I did my part. They did their part.

{¶22} The trial court advised Smith to "think while [he was] in prison" about "disrespect for one another." Smith asserts the reason he received a sentence of nine years was because of the admissions the trial court "compelled" from him, as set forth above. This court does not read the record as Smith asserts.

**{¶23}** Crim.R. 32(A) requires the trial court to "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The rule not only guarantees the defendant's right of allocution, it imposes an affirmative duty on the trial court to make the request. *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), paragraphs one, two and three of the syllabus.

**{¶24}** With that in mind, the context of the exchange that occurred in this case was simply the trial court's way of complying with the rule's mandate. *See, e.g., State v. Mitchell*, 7th Dist. No. 10 MA 55, 2011-Ohio-2974 (no "appealable issue" when defendant made statement apologizing for his actions during allocution). Smith initially declined to exercise his right of allocution; the trial court, with some frustration, called for assurance that such was Smith's desire. Smith reconsidered. Smith's comments demonstrated his intent to provide information in mitigation, rather than an unwilling relinquishment of his right against self-incrimination. *Id.*

**{¶25}** Because the record does not reflect that the trial court compelled Smith to speak in allocution, Smith's second assignment of error also is overruled.

**{¶26}** Smith's convictions and sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR