[Cite as *State v. Clunen*, 2013-Ohio-5525.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 12 CO 30 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| ALEX CLUNEN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                   Court, Case No. 10CR299.

JUDGMENT:                          Affirmed.

APPEARANCES:
For Plaintiff-Appellee:            Attorney Robert Herron
                                   Prosecuting Attorney
                                   Attorney Timothy McNicol
                                   Assistant Prosecuting Attorney
                                   105 South Market Street
                                   Lisbon, Ohio  44432

For Defendant-Appellant:           Attorney Jeffrey Moliterno
                                   380 Fairground Boulevard, #302
                                   Canfield, Ohio  44406

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                   Dated:  December 10, 2013

VUKOVICH, J.


**{¶1}** Defendant-appellant Alex Clunen appeals the decision of the Columbiana County Common Pleas Court sentencing him to two years in prison upon his guilty plea to child endangering. Appellant contends that certain statements and questions by the court at the sentencing hearing evinced an intent to violate his constitutional rights to remain silent and to a jury trial, opining that the court penalized him with a harsher sentence because he did not plead guilty sooner. He also states that the sentencing factors were not properly applied to the facts of the case. For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

**{¶2}** At the time of the offense, appellant was twenty-two years old. He lived with his mother in Salem, Ohio, and his girlfriend had recently moved in with her two-year-old daughter, DC. On the morning of September 19, 2010, DC's mother went to work at 7:30 a.m., and appellant was left to watch DC and his own one-year-old daughter. At 10:00 a.m., he texted a sixteen-year-old friend, "She threw a train at my daughter. U don't fuck wit my daughter. I beat her ass and she stood ther for awhile."

**{¶3}** Just before noon, DC's grandmother and great-grandmother arrived to pick her up. Appellant told the child's great-grandmother that the child fell over a gate in the house. The grandmother and great-grandmother immediately brought the child to the police station as they were suspicious of the injuries to the child's face and bottom. Specifically, the child developed bruising to her right buttock, the top of the gluteal fold, the left side of her face, and a large area involving her right eye and right forehead area. It was also reported that her hair had been cut. The child's mother came to the police station and reported that the child had no marks that morning. The child was brought to Salem Hospital and then transferred to Akron Children's Hospital for evaluation.

**{¶4}** Appellant was indicted for child endangering, a third degree felony, which involves administering corporal punishment or other physical disciplinary measure to a child which is excessive under the circumstances and creates a

substantial risk of serious physical harm.  R.C. 2919.22(B)(3), (E)(1), (3).  The case was originally set to be tried to a jury trial in August 2011.  At the final status hearing, appellant's counsel withdrew.  New counsel was appointed, and the case was continued on counsel's request for a medical expert.  The jury trial was then rescheduled for May 8, 2012.

{¶5}    The day before the scheduled trial, appellant agreed to plead guilty as charged.  Under the agreement, appellant would seek community control but the state would recommend eighteen months in prison, oppose community control, and ask for Eastern Ohio Correction Center before any community control.  The court accepted the plea at a May 8, 2012 hearing, and ordered a presentence investigation, a victim impact statement, and an EOCC evaluation.

{¶6}    Thereafter, the EOCC intake coordinator sent the court a letter deeming appellant appropriate for placement.  The victim impact statement was filled out by the child's mother, who had recently married appellant and who was four months pregnant with his child.  She said there was no economic loss but did not answer whether the amount was covered by insurance.  When asked to describe the physical injury and the seriousness and permanency of the injury, she responded merely, "The injuries were not serious or permanent."  When asked about the length of hospitalization, she responded, "only a few hours."  She disclosed that the offense caused no change in their home, work, or family.  Her comment to the court was:  "It has been almost 2 yrs since the incident & the offender has attended counseling and attempted to reconcile.  I believe probation would be sufficient."

{¶7}    In his presentence investigation interview, appellant insisted that the child's injuries were caused when she fell onto the wooden part of a box spring he was moving after she stood on a toy box he used as a baby gate.  The PSI showed that appellant had no prior felony convictions.  When he was 18, he was charged with felony identity fraud, but he pled to misdemeanor theft and was given one year of probation.  A few months after that, he was convicted of theft from a department store, spent one day in jail, and was placed on probation for three years.  A year later, he was convicted of underage consumption and obstruction of justice; he spent

five days in jail and was then given three years of probation concurrent with the prior offense. He reported that he was unemployed and received $200 per month in food stamps. He also stated that he pays $250 per month in child support for a child whose mother has not allowed him to visit due to this offense.

{¶8} At sentencing, the state introduced two photographs of the injuries on the child's face and one photograph of the injuries on her buttocks. The state also introduced a photograph the police took of the text message appellant wrote about the incident. The state asked the court to consider the age of the victim, the harm he caused, and his failure to take responsibility for his actions, citing the PSI. The state noted that the medical evaluation concluded the injuries were consistent with physical abuse, the location and the pattern of bruising was inconsistent with the history provided by appellant, the injuries were caused by blunt force trauma to the face and buttocks, and the object used was broad and flexible. (Tr. 19-20).

{¶9} The child's maternal grandmother informed the court that, as a result of this offense, appellant is not permitted to see his daughter (who was present during the offense). The grandmother opined that appellant should be sentenced to the maximum and expressed concern for the new baby. She stated that appellant destroyed DC's life. (Tr. 23). The child's maternal great-grandmother stated that appellant never accepted responsibility, never said he was sorry, and has no guilt over the injuries, noting that "it wouldn't have been so hard on us as a family trying to correct things with the little girl" if he had expressed sorrow. (Tr. 23).

{¶10} The defense stated that appellant was recently married, has a child on the way, was seeking employment, and pays child support for his child every month. The defense pointed out that it was his first felony conviction and urged that he was not a danger to society. (Tr. 21-22). Then, the court engaged in the following colloquy with appellant:

> THE COURT: The law gives you the privilege of making any statement that you'd like before we come to a decision here. Is there anything that you would like to say to me?

MR. CLUNEN:  I'm sorry and I hope you give me probation or EOCC something.

THE COURT:  Now, Alex, when you say you're sorry, what are you sorry for?  What did you do?

MR. CLUNEN:  Child endangering.  I abused a little girl.

THE COURT:  All right, what -- that's the legal description, but what did you physically do?

MR. CLUNEN:  Abused a little girl.

THE COURT:  We're getting closer, but what did you do?  In what way did you abuse the little girl?

MR. CLUNEN:  Hit her with a broad object.

THE COURT:  All right.  What was it?

MR. CLUNEN:  My hand.

THE COURT:  Did you use anything else besides your hand?

MR. CLUNEN:  No, sir.

THE COURT:  Are you sure?

MR. CLUNEN: Positive.

THE COURT:  You told the probation department that you were in the process of removing a mattress and box springs out of the house  * * * [and the child] 'tripped getting off the toy chest and fell against the wooden part of the box springs.'  That really wasn't true; was it?

MR. CLUNEN:  No, sir.

THE COURT:  This text message [which the court then reads] * * * That's what happened then, right?

MR. CLUNEN:  Yes, sir.

THE COURT:  Why didn't you tell that to the probation department?

MR. CLUNEN:  I don't know.

THE COURT:  You've been kind of slow at taking responsibility, haven't you?

MR. CLUNEN:  I guess.

THE COURT:  You don't know that?  It says, 'Alex indicated [the grandmother] -- now this [is] what you told the probation -- took [DC] to the police and a couple of days later the police and children's services came to talk to him.'  So this has all been in progress for a long time. This was in September of 2010, right?  And just today you've decided that maybe you might talk a little bit about it; true?

MR. CLUNEN:  Yes, sir.

THE COURT:  Anything else you want to tell me?

MR. CLUNEN:  No, sir.

(Tr. 24-27).

**{¶11}** As provided in the plea agreement, the state recommended eighteen months in prison, from an available range of nine to thirty-six months.  The court sentenced appellant to twenty-four months in prison.  Appellant filed a timely notice of appeal from the court's July 25, 2012 sentencing entry.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶12}** Appellant sets forth two assignments of error relating to his sentence, the first of which provides:

**{¶13}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED ALEX'S 5TH AMENDMENT RIGHT TO SILENCE AND 6TH AMENDMENT RIGHT TO A JURY TRIAL BY PUNISHING ALEX FOR NOT PLEADING GUILTY SOONER."

**{¶14}** It is unconstitutional for a sentencing court to impose a harsher sentence merely because a defendant exercised his rights. *State v. Donald*, 7th Dist. No. 08MA154, 2009-Ohio-4638, ¶ 19, citing *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (cannot base harsher sentence on fact that defendant successfully won on appeal). A defendant has a right to remain silent at sentencing even after a guilty plea, and a court cannot use that silence at sentencing or at trial against him. *Donald*, 7th Dist. No. 08MA154 at ¶ 11, citing *Mitchell v. United States*, 526 U.S. 314, 321, 119 S.Ct. 1307, 143 L.Ed.2d 424 (which case noted at page 330 that it was not addressing the use of silence to determine a lack of remorse or acceptance of responsibility). Likewise, a defendant has a right to a jury trial, and a court cannot penalize a defendant for refusing a plea and instead exercising his right to trial. *Donald*, 7th Dist. No. 08MA154 at ¶ 25-26.

**{¶15}** In *Donald*, we found this self-incrimination premise violated where the court noted that the state presented overwhelming evidence at trial and "the defendant chose not to speak at all. So, evidently, he agreed that all that was true the way it was presented." *Id.* at ¶ 9. Although the trial court stated various other reasons supporting the sentence, we remanded for resentencing because part of the court's rationale was based upon the defendant's exercise of his rights against self-incrimination. *Id.* at ¶ 16.

**{¶16}** We likewise found the jury trial premise violated because the defendant was offered a lesser sentence in a plea offer and the court told the defendant during plea discussions that if he went to trial and lost, he would receive the maximum. *Id.* at ¶ 21-23 (and the court later said the defendant was "stupid" for taking it to trial). A defendant's right to trial is violated if the record demonstrates that the court sentenced the defendant more harshly than the original plea offered because he took the case to trial. *Id.* at ¶ 27-30 (but, the mere fact that the defendant received a

harsher sentence than the original offer does not permit presumption of violation unless the court participated in the plea discussion).

**{¶17}** Appellant believes that his case is similar to the *Donald* case. He urges that the record demonstrates that the court sentenced him harshly because he exercised his right to remain silent until sentencing and because he was originally going to exercise his right to trial. He also suggests that his right to silence at sentencing was violated because the court did not inform him at sentencing that he had such a right.

**{¶18}** As to the latter contention, a sentencing court is required to ask the defendant personally if he wants to make a statement or present information in mitigation. Civ.R. 32(A)(1). The rule does not merely give the defendant a right of allocution at sentencing, but it specifically places an affirmative duty of the trial court to offer the right. *State v. Campbell*, 90 Ohio St.3d 320, 323-326, 738 N.E. 2d 1178 (2000) (remanding for resentencing where court did not offer this right). There is nothing in the rule or case law thereon requiring a sentencing court, before asking the defendant if he wishes to exercise his allocution rights, to remind the defendant that he need not speak.

**{¶19}** Moreover, the trial court did not demand that appellant exercise his allocution rights. *Compare State v. Smith*, 8th Dist. No. 97500, 2012-Ohio-3251, ¶ 21-25 (and that court still found no error where the sentencing court instructed the defendant that he needed to say something after the defendant had answered that he had nothing to say). Rather, the sentencing court here explained: "The law gives you the privilege of making any statement that you'd like before we come to a decision here. Is there anything that you would like to say to me?"

**{¶20}** Thereafter, *appellant did not exercise his right to remain silent.* Instead, he apologized and asked for probation, which prompted court's inquiry into the sincerity of his apology and the aim of the apology, considering the fact that he had just told the probation department during the presentence investigation that the child's injuries were caused by her own fall.

**{¶21}** Notably, lack of remorse is a sentencing factor. R.C. 2929.12(D)(5). Thus, even where a defendant does *not* speak at sentencing, the court's statement that the defendant demonstrated lack of remorse and unwillingness to take ownership, does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors. *See State v. Moore*, 11th Dist. No. 2011-G-3027, 2012-Ohio-3885, ¶ 47 (where defendant contested court's statements and argued that he would have had to give up his right against self-incrimination if he had expressed remorse at sentencing). *See also State v. Betts*, 8th Dist. No. 88607, 2007-Ohio-5533, ¶ 88-90.

**{¶22}** *Here, the defendant did not exercise right to remain silent. Instead, he spoke at sentencing. See Betts*, 8th Dist. No. 88607 at ¶ 90. As a result, the court was free to delve into the state's assertion and the victim's great-grandmother's claim that appellant accepted absolutely no responsibility for his actions and experienced no feelings of guilt. *See State v. Hobbs*, 8th Dist. No. 8146, 2005-Ohio-3416, ¶ 10 (Fifth Amendment not implicated where defendant responded to court's query as to whether he had anything to say and then to further questions). *See also State v. Dahms*, 6th Dist. No. S-11-028, 2012-Ohio-3181, ¶ 11-12. Likewise, the court could inquire into appellant's post-guilty-plea statement to the probation department that was at odds with his guilty plea. We discern no violation of appellant's right to remain silent in this case.

**{¶23}** As to the alleged violation of his right to a jury trial, we cannot conclude that the court's statement regarding the time between the offense and appellant's taking of responsibility demonstrates an intent to penalize appellant for originally desiring to take the case to trial. The court's statements must be read in context of the entire case. Appellant pled guilty and wanted to obtain community control and EEOC placement. It was thus to his benefit to cooperate in the presentence investigation. Instead of exercising a right to silence during the presentence investigation, he gave the same statement that he made to the child's great-grandmother on the day of the incident which was at odds with his subsequent guilty plea.

{¶24} Then, at sentencing, instead of exercising his right to silence, he exercised his right to allocution. And, he admitted that the statement in the PSI was incorrect, apparently to disprove the allegations that he lacked remorse. Although the court did reference how long the case was pending, the court's point seems to have been an observation regarding remorse and responsibility. We do not agree that the court's point was that appellant deserved a harsher sentence than the state's recommendation because he originally wanted to take the case to trial. In most cases involving a plea, a trial date had previously been set; pleas regularly occur at the final status hearing as this is part of the point of such hearing. The court did not mention the scheduled trials or the original desire for a jury trial. Moreover, the court sentenced appellant to a year less than the maximum sentence of three years.

{¶25} Furthermore, appellant's case cannot be compared to those where a defendant took the case to trial and then received a harsher sentence than provided in a rejected plea offer and where the trial court participated in the plea discussion or made statements in the record showing the reason for the harsh sentence was the failure to plead. The trial court did not involve itself in plea discussions here. And, appellant did not refuse the plea offered by the state. Instead, he pled guilty. As he did not take his case to trial, the cases relied upon are inapposite. The arguments presented under this assignment of error are thus overruled.

ASSIGNMENT OF ERROR NUMBER TWO

{¶26} Appellant's second assignment of error provides

{¶27} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY SENTENCING ALEX TO 24 MONTHS OF INCARCERATION."

{¶28} Appellant reiterates the arguments from the prior assignment and adds a claim that the facts do not support the sentence. He notes that this is his first felony conviction, he is newly married with his second child on the way, and he was deemed appropriate for placement at EEOC. He states that the victim impact statement relayed information favorable to his position and emphasizes that the harm was not serious. He suggests that the court did not follow the portion of R.C.

2929.11(A) instructing that the court impose the minimum sanctions to accomplish the sentencing goals. He concludes that the court did not properly weigh the seriousness factors in R.C. 2929.12(B). (He also points to the portion of R.C. 2929.11(B) dealing with consistency in sentencing for similar crimes by similar offenders, but his only argument as to this contention is that the court did not properly consider the sentencing criteria in R.C. 2929.12.)

{¶29} Pursuant to R.C. 2929.11(A), a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing, which are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on government resources. In order to achieve these purposes, the court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. R.C. 2929.11(A).

{¶30} This statute goes on to say that a felony sentence shall be reasonably calculated to achieve the two overriding purposes commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B). In imposing such a sentence, the court has discretion to determine the most effective way to comply with the purposes and principles of sentencing, and in doing so, the court shall consider the seriousness, recidivism, and military service factors and may consider any other factors that are relevant to achieving those purposes and principles of sentencing. R.C. 2929.12(A)-(F).

{¶31} The seriousness factors indicating that the offender's conduct is more serious than conduct normally constituting the offense include: (1) the victim's physical or mental injury was exacerbated due to the victim's physical or mental condition or age; (2) the victim suffered serious physical, psychological, or economic harm; (3–5) relating to public office, position of trust in the community, or profession; (6) the offender's relationship with the victim facilitated the offense; (7) relating to an

offense for hire or as part of organized crime; (8) the offender was motivated by certain prejudice; and (9) certain offenses against family or household members. R.C. 2929.12(B).

{¶32} The seriousness factors indicating that the offender's conduct is less serious than conduct normally constituting the offense include: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or property; and (4) there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(C).

{¶33} The recidivism factors indicating that the offender is likely to commit future crimes include: (1) at the time of the offense, the offender was under release from pretrial or presentencing confinement, under a sentencing sanction or postrelease control for an earlier offense, or had been unfavorably terminated from postrelease control for a prior offense; (2) the offender has prior delinquency adjudications or a criminal history; (3) the offender has not responded favorably to prior sanctions; (4) the offender has demonstrated a pattern of drug or alcohol abuse related to the offense and fails to recognize the pattern or refuses treatment; and (5) the offender shows no genuine remorse for the offense. R.C. 2929.12(D).

{¶34} The recidivism factors indicating that the offender is not likely to recommit include: (1) lack of prior delinquency adjudications; (2) lack of prior criminal convictions; (3) the offender led a law-abiding life for a significant number of years; (4) the offense was committed under circumstances not likely to recur; and (5) the offender shows genuine remorse for the offense. R.C. 2929.12(E).

{¶35} Here, the victim was only two years old. *See* R.C. 2929.12(B)(1). She was struck multiple times, seemingly at least four times. Some of the injuries occurred to both sides of her face around the eyes, which can be viewed as an extreme location for imposition of discipline on a two-year-old. *See* R.C. 2929.12 (A) (any other factor), (B)(1)-(2). The victim impact statement related that the injuries were not serious or permanent. However, the mother's statement on seriousness and her recommendation of probation need not be given great weight since she has

since married the defendant, she was pregnant with his child, and she was not thorough in her answers, failing to even describe the physical injuries as instructed.

**{¶36}** Moreover, some physical harm was expected by the actions. *See* R.C. 2929.12(C)(3). Appellant's relationship with the child facilitated the offense as he was babysitting her and he lived with her. *See* R.C. 2929.12(B)(6). He committed the offense in front of his young daughter. He committed it because the two-year old threw a toy at his sixteen-month old daughter. This offense did not involve inducement or strong provocation by the victim; nor are there substantial grounds to mitigate the conduct. *See* R.C. 2929.12(C)(1)-(2). It cannot be said that the offense was committed under circumstances that are unlikely to recur. *See* R.C. 2929.12(E)(4).

**{¶37}** According to statements at sentencing, he did not facilitate the family healing by thereafter ever expressing sorrow. He sent a text message, the contents of which suggest that he did not regret the degree or number of blows immediately after the offense. In fact, this twenty-two year old father seemed to be bragging about his defense of his child in such a manner. Notwithstanding the text message, which police retrieved the day of the incident, appellant maintained his gate story to the probation office even after pleading guilty. The court heard him exercise his allocution rights and heard him apologize. A finding that he did not show genuine remorse was within the trial court's discretion. *See* R.C. 2929.12(D)(5), (E)(5).

**{¶38}** Although he has no prior felony convictions and no juvenile adjudications, he has a prior felony arrest, and he has four prior misdemeanor convictions from three prior incidents. *See* R.C. 2929.12(D)(2)-(3), (E)(2)-(3). He also has a prior fictitious registration offense and an unauthorized license plate offense, which may suggest dishonesty.

**{¶39}** The court sentenced appellant to twenty-four months from the statutory range of nine to thirty-six months. All of the pertinent facts and circumstances were presented for the trial court's consideration. There is no indication that the court failed to properly consider the sentencing factors.

{¶40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.