[Cite as *State v. Thoennes*, 2014-Ohio-2524.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 13 MA 52 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| MATTHEW J. THOENNES, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from County Court
#4, Case No. 12 CRB 1132.


JUDGMENT:  Conviction Affirmed. Reversed
and Remanded for Resentencing.


APPEARANCES:
For Plaintiff-Appellee:  Attorney Paul J. Gains
Prosecuting Attorney
Attorney Ralph M. Rivera
Assistant Prosecuting Attorney
21 W. Boardman St., 6th Floor
Youngstown, OH 44503

For Defendant-Appellant:  Attorney Albert Palombaro
4822 Market Street, Suite 301
Youngstown, OH 44512


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated: June 4, 2014

DeGenaro, P.J.

{¶1} Defendant-Appellant, Matthew J. Thoennes appeals the April 3, 2013 judgment of the Mahoning County Court #4 convicting him of assault. Thoennes asserts that his conviction is against the manifest weight of the evidence and that he was denied the right of allocution at sentencing.

{¶2} Thoennes's arguments are meritorious in part. Although there was competent credible evidence to support his conviction, the trial court failed to afford Thoennes his right to allocution. Accordingly, Thoennes's conviction is affirmed, but his sentence is reversed, and this matter is remanded to the trial court for resentencing.

### Facts and Procedural History

{¶3} On October 6, 2012, Thoennes was arrested by the Austintown Police Department for Assault in violation of R.C. 2903.13, a first degree misdemeanor. The matter proceeded to a bench trial on April 3, 2013.

{¶4} The State's first witness was Edward Riley, who testified that he resided in Austintown Township with his girlfriend Tina Pastore and her son in a duplex apartment. Johnathan Faircloth, Thoennes, and Thoennes's girlfriend resided in the adjoining duplex.

{¶5} Riley worked on October 6, 2012, and returned home around 5:00 p.m. He was drinking a beer when his neighbors, Thoennes and Faircloth, walked into his apartment with his girlfriend's son. Riley stated both Thoennes and Faircloth were intoxicated. After Faircloth accused him of pushing Pastore, Riley asked both men to leave. Riley and Faircloth then began physically fighting at the bottom of the steps by the living room within his apartment.

{¶6} Riley further testified Thoennes then jumped on him, began choking and hitting him in the head, and Faircloth rejoined the altercation. This was the first time the police were called but they left after Riley informed them he did not want anything done, believing the altercation was over. When asked if he was seriously injured or harmed at that time, Riley stated that his face was swollen and his glasses were broken.

{¶7} Later that evening, Thoennes returned and began verbally taunting Riley. The police were called for a second time and Riley again stated he didn't want anyone

arrested. The police indicated that if they were called back again someone would be arrested.

{¶8} Riley further testified that about an hour later, as Riley and Pastore were going to bed, Riley heard Thoennes yelling outside. Riley went downstairs, opened the door, exchanged profanities with Thoennes, then attempted to shut the door. Thoennes broke the window to the screen door and dragged Riley outside onto the ground. Thoennes then hit and kicked him in the face and ribs, and Riley lost consciousness, although he could not remember how many times or how long he was unconscious. Riley identified Thoennes as the man who assaulted him, and confirmed that they were both under the influence of alcohol at the time. Riley identified State's Exhibit B, a photograph taken by the police of his injuries.

{¶9} On cross, Riley stated he did not want to be at court and he had contacted the prosecutor's office and told them he wanted the case to be over. Defense counsel had Riley read the statement he gave on the date of the incident, and counsel questioned him on inconsistencies such as not mentioning that the parties were drinking, not knowing how the door was damaged, and whether or not he was unconscious. Further, counsel questioned whether Riley's girlfriend, Pastore, was having an affair with Faircloth, to which Riley replied he had no idea. Riley clarified that Thoennes was not attempting to break up a fight between Faircloth and Riley but actually joined in the fight.

{¶10} Pastore testified that her neighbors, Faircloth and Thoennes followed her son into their home. When they accused Riley of physically abusing her, she tried to tell them it wasn't true, but Faircloth and Riley started fighting on the couch and Thoennes came in and started choking Riley. The police arrived but no one was charged in that first altercation.

{¶11} Regarding the final altercation, Pastore testified that Thoennes was outside calling Riley names, and that they went downstairs after hearing glass shatter. She saw Riley being pulled through the door but was unable to see who it was. Pastore called the police, and through the door saw Faircloth kicking Riley in the head and Thoennes choking him. Afterwards she noticed Riley's face was swollen and red, his eye was red

and his glasses broken. She further identified State's Exhibit B, the photograph of Riley's injuries.

{¶12} On cross, Pastore stated Riley did not push, shove or physically abuse her, but conceded that the night before Riley had witnessed her and Faircloth kissing. She also reiterated that during the fight Thoennes was not trying to pull Riley and Faircloth apart, he was choking Riley.

{¶13} Faircloth was the only witness who testified for the defense and admitted that he had pled guilty for his involvement in the altercation. Faircloth confirmed that he and Riley got into an argument on the day in question, and that Thoennes was trying to separate him and Riley. Faircloth stated that he later returned after he heard Riley yelling at Pastore again. Faircloth continued that he was the one who banged on, slammed, and smashed the door. He started fighting with Riley again and Thoennes tried to separate them. When the police were called the third time Faircloth ran inside his side of the duplex and hid; after Thoennes was taken to jail Faircloth turned himself in.

{¶14} The trial court convicted Thoennes of Assault and sentenced him to 180 days in jail, with 165 days suspended, a $250.00 fine, court costs and 12 months of community control.

### Manifest Weight

{¶15} In his second of two assignments of error, which we will address out of order for clarity of analysis, Thoennes asserts:

{¶16} "THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT APPELLANT'S CONVICTION FOR ASSAULT."

{¶17} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is because the triers of fact are in a better position to determine credibility issues since they personally viewed the demeanor, voice inflections

and gestures of the witnesses. *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶18}** To determine whether a verdict is against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

**{¶19}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the factfinder lost its way.' " *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶81 (2d Dist.). In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, *2, citing *State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶20}** To convict Thoennes of assault in violation of R.C. 2903.13(A), the trial court had to find that Thoennes knowingly caused or attempted to cause physical harm to another. Physical harm includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Under R.C. 2901.22(B), someone acts knowingly, "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

**{¶21}** Thoennes argues the State failed to prove that he knowingly caused or attempted to cause physical harm to Riley, and further, that Riley wasn't actually harmed as he did not go to the hospital or seek medical care. Regarding the second contention, both Riley and Pastore testified consistently about Riley's facial injuries. Riley stated he had a bloodied lip, facial abrasions, and swelling on his cheeks and nose. Pastore testified that Riley's face was swollen, red, and that his eye was red. Both Riley and Pastore identified the photograph taken by the police of Riley's injuries.

{¶22} As for Thoennes knowingly causing those injuries, Riley and Pastore both testified that Thoennes initiated three separate confrontations. In the first incident, Thoennes choked Riley and hit him in the head. In the third incident Riley testified that Thoennes dragged him outside and repeatedly hit and kicked him in the face and ribs. Although Pastore could not see who pulled Riley through the door, she testified that Faircloth and Thoennes initiated both the altercations, and that she saw Thoennes choking Riley after he was pulled through the door.

{¶23} Thoennes argues for the first time on appeal that the testimony of Faircloth combined with that of Pastore establishes that Riley had a reason to be angry with Faircloth prior to and on the date of the incident. Moreover, because Faircloth and Thoennes lived together, Riley was also angry with Thoennes, providing a motive for Riley to be untruthful at trial. However, a review of the record demonstrates this theory was not explored at trial. Instead, trial counsel pursued the theory that Thoennes was breaking up the altercations. Thoennes further contends that Faircloth's testimony that only he harmed Riley and that Thoennes tried to break up the fight constitutes reasonable doubt.

{¶24} The credibility of the witnesses is primarily for the trial court to determine and deference must be given to same. *DeHass, supra*. When two reasonable views or conflicting versions of the evidence exist, it is not the province of an appellate court to choose which version it believes, but rather whether there is competent, credible evidence in the record supporting the verdict. Here the essential elements of Theonnes's assault charge meets this standard. Thus we cannot say that the verdict was against the manifest weight of the evidence. Accordingly, Thoennes's second assignment of error is meritless.

### Allocution

{¶25} In his first and final of two assignments of error, Thoennes asserts:

{¶26} "THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO PERMIT THE DEFENDANT THE RIGHT OF ALLOCUTION."

**{¶27}** Ohio Crim.R. 32 (A)(1) provides that at the time of imposing sentence, the trial court "shall afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." An absolute right of allocution is conferred by Ohio Crim.R. 32(A)(1). *State v. Green*, 90 Ohio St.3d 352, 358, 738 N.E.2d 1208 (2000).

**{¶28}** "The right of allocution applies to both the defendant and his attorney." *State v. Land*, 7th Dist. 00-C.A.-261, 2002-Ohio-1531, ¶24 citing *Defiance v. Cannon* (1990), 70 Ohio App.3d 821, 827-828, 592 N.E.2d 884; Crim.R. 32(A)(1). "A sentencing court is required to ask the defendant personally if he wants to make a statement or present information in mitigation." *State v. Clunen*, 7th Dist. 12 CO 30, 2013-Ohio-5525 ¶18 citing Civ.R. 32(A)(1). "Trial courts must painstakingly adhere to Crim.R. 32 guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Green,* 90 Ohio St.3d, 359-360.

**{¶29}** A review of the record demonstrates that the trial court did not address Thoennes directly. The only inquiry from the bench was as follows: "Does the defense wish to be heard on any sentencing issues?" Counsel addressed the trial court. However, nothing was said to or by Thoennes. As the trial court did not address Theonnes directly, his first assignment of error is meritorious.

**{¶30}** In sum, Thoennes's conviction is not against the manifest weight of the evidence. However, the trial court failed to afford Thoennes the right of allocution. Accordingly, Thoennes's conviction is affirmed, but his sentence is reversed and this matter is remanded to the trial court for resentencing.

Donofrio, J., concurs.
Waite, J., concurs.