[Cite as *State v. Loman*, 2014-Ohio-1570.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
AUGLAIZE COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                 CASE NO. 2-13-17

     v.

ZACCORIA J. LOMAN,                   O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2012-CR-0169

Judgment Reversed, Sentence Vacated and Cause Remanded

Date of Decision: April 14, 2014

APPEARANCES:

     *Stephen A. Goldmeier* for Appellant

     *Edwin A. Pierce* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Zaccoria J. Loman, appeals the Auglaize County Court of Common Pleas' "journal entry – orders on sentence" following a negotiated guilty plea to one charge of breaking and entering in violation of R.C. 2911.13(A) and one charge of drug possession in violation of R.C. 2925.11(A), (C)(1)(a).

{¶2} Upon accepting the negotiated plea, the trial court released Loman on bond pending the preparation of an updated presentence investigation report ("PSI") for later sentencing. One of the conditions of the bond required Loman to "contact his attorney once each week."

{¶3} At the sentencing hearing, the trial court questioned whether Loman had failed to contact his attorney once each week and thereby violated this condition of his bond. The trial court then directed Loman's counsel to provide the court with the information necessary to answer this question. Relying solely upon representations of defense counsel, the testimony of defense counsel's office receptionist, and Loman, the trial court found that Loman had failed to contact his attorney once each week and therefore had violated the conditions of his bond. The trial court then sentenced Loman to a 12-month concurrent prison term on the two charges.

{¶4} Pursuant to R.C. 2929.13(B)(1)(a) and (b) in effect at the time, Loman was required to receive community control for these offenses unless certain statutory exceptions applied. The only statutory exception applicable here was the one for violation of "a term of the conditions of bond as set by the court." R.C. 2929.13(B)(1)(b)(iii). Thus, in this case, the trial court could not have imposed a prison sentence without finding the bond violation. Because the only evidence in the record allowing a prison sentence instead of community control was provided by his own counsel, Loman now appeals. For the reasons that follow, we reverse.

{¶5} This case stems from an August 10, 2012 incident in which Loman accompanied a friend, Wesley Elam, who broke into a building, stole a generator, and then sold the generator. (Mar. 13, 2013 Tr. at 15-16). Loman admitted to receiving at least a "hit" of heroin for his assistance in the theft, and during their investigation into the incident, authorities located a foil packet in Loman's wallet containing methylenedioxypyrovalerone, or MDPV. (*Id.* at 16).

{¶6} On September 7, 2012, the Auglaize County Grand Jury indicted Loman on Count One of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony, and Count Two of theft in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor. (Doc. No. 1).

{¶7} On October 16, 2012, Loman appeared before the trial court for the purpose of setting bond. (Oct. 16, 2012 Tr. at 6-7); (Doc. Nos. 10, 12). Finding

Loman indigent, the trial court appointed the public defender to represent him. (Oct. 16, 2012 Tr. at 5). (*See also* Doc. Nos. 17-18). The trial court released Loman on his own recognizance and ordered seven special conditions for bond. The only condition relevant to this case is condition number four, which provides as follows:

**4. The Defendant shall contact his attorney once each week;**

(Doc. No. 10); (Oct. 16, 2012 Tr. at 7).

{¶8} On October 17, 2012 Loman entered pleas of not guilty to both counts of the indictment. (Oct. 17, 2012 Tr. at 3); (Doc. No. 20). The trial court continued Loman's bond. (*Id.* at 5); (*Id.*). On November 26, 2012, Loman filed a motion for intervention in lieu of conviction pursuant to R.C. 2951.041, requesting that the trial court order an assessment and a PSI to determine his eligibility for intervention. (Doc. No. 35).

{¶9} On December 7, 2012, the trial court granted Loman's requests for an assessment and a PSI. (Doc. No. 36). The trial court ordered that Loman arrange for the assessment by a mental health professional to be completed and delivered to the trial court within a month of December 7, 2012. (*Id.*). The trial court also ordered that Loman contact the Auglaize County Pre-Sentence Investigator immediately to arrange for an interview. (*Id.*).

{¶10} On February 13, 2013, after receiving the PSI and a document from the assessment provider, the trial court held a hearing on Loman's motion for intervention in lieu of conviction. (Feb. 13, 2013 Tr. at 3); (Doc. No. 41). After Loman's counsel conceded that one of the required factors under R.C. 2951.041 was not present, the trial court denied Loman's intervention request. (*Id.* at 3-4); (*Id.*). The trial court continued Loman's bond. (Doc. No. 41).

{¶11} On March 6, 2013, plaintiff-appellee, State of Ohio, filed a bill of information charging Loman with one count of possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), a fifth-degree felony. (Doc. No. 48).

{¶12} On March 15, 2013, the parties filed a negotiated plea agreement. (Doc. No. 53). As part of the plea agreement, Loman agreed to waive prosecution by indictment, and he agreed to plead guilty to Count One of the indictment and to the bill of information. (*Id.*). The State agreed to ask for leave of the trial court to enter a nolle prosequi as to Count Two of the indictment. (*Id.*).

{¶13} The trial court held a change-of-plea hearing on March 13, 2013. (Mar. 13, 2013 Tr. at 3). At the hearing, Loman pled guilty to Count One of the indictment, waived prosecution by indictment as to the drug-possession count, and pled guilty to the bill of information. (*Id.* at 11, 25); (Doc. No. 54). The trial court accepted Loman's pleas and found him guilty of both charges. (*Id.* at 15, 27); (*Id.*). The State requested leave to enter a nolle prosequi as to Count Two of the

indictment, which the trial court granted. (*See id.* at 3); (*Id.*). The trial court dismissed Count Two of the indictment upon completion of sentencing. (Doc. No. 54). The trial court also sustained Loman's request for an updated PSI and ordered the PSI updated by the "Auglaize County PSI Writer" before sentencing. (Mar. 13, 2013 Tr. at 27, 30-31); (Doc. Nos. 54, 56). The trial court did not explicitly order Loman to cooperate with the preparation of the updated PSI but did tell Loman at the change-of-plea hearing, "go talk to [the PSI writer] and update her on it, everything else including your work, including your work slips, like your pay stubs, including last year's income tax." (Mar. 13, 2013 Tr. at 31). The trial court continued Loman's bond pending sentencing. (*Id.* at 30); (Doc. No. 54).

{¶14} On May 2, 2013, based on a report of the presentence investigator, the trial court issued a journal entry revoking Loman's bond and issuing a bench warrant for his arrest. (Doc. No. 59). Attached to the journal entry was an April 19, 2013 memorandum from the PSI writer to the State, with the trial court judge copied. (*Id.*) The memorandum indicated that Loman "has not reported for his scheduled PSI interview appointments with this writer," detailed the PSI writer's contacts and attempted contacts with Loman, and concluded that "[a]s of 4/19/2013, the offender, Zaccoria Loman, has failed to contact this office to proceed with his Presentence Investigation." (*Id.*). Among the contacts detailed

by the PSI writer was her notification of Loman's counsel on April 2, 2013 of his "non-compliance with the Court's order." (*Id.*). In its bench warrant, the trial court cited Loman's failure to cooperate in the completion of the update to his PSI: "It appearing to the Court this May 1, 2013, that one ZACCORIA J. LOMAN * * * has failed to complete the Pre-Sentence Investigation." (Doc. No. 63).

{¶15} The trial court held a sentencing hearing on May 8, 2013. (May 8, 2013 Tr. at 3); (Doc. No. 64). The morning of the hearing, Loman surrendered to the sheriff's deputy; however, at the hearing, the trial court noted that Loman "appeared for sentencing as it had been scheduled" and recalled the bench warrant as moot. (May 8, 2013 Tr. at 3-4). Loman's counsel requested that the trial court continue the sentencing hearing so that the PSI could be updated, with Loman to remain in custody until he completed his interview with the PSI writer and then to be released on bond pending completion of the updated PSI. (*Id.* at 4). In the alternative, Loman's counsel requested that the trial court use the February 12, 2013 PSI so that it could consider sentencing Loman to community control. (*Id.* at 5). The trial court said it would use the February 12, 2013 PSI and proceed to sentencing. (*Id.*).

{¶16} At the sentencing hearing, pursuant to the plea agreement, the State recommended that Loman be sentenced to community control. (*Id.* at 6). The trial court then questioned the parties concerning whether the stolen generator was

recovered and returned to the owner. (*Id.* at 6-9). When it turned to Loman's counsel for mitigation, the trial court said that, from its understanding, Loman failed to contact his attorney once each week and that it "wanted to sort of invite * * * litigation and/or commentary" on that issue and "want[ed] it presented as to what dates of contact" Loman had with his attorney's office. (*Id.* at 9-10). Because no one seemed to be able to provide the precise information the trial court was requesting, Loman's counsel had his office receptionist come to court and testify concerning the extent to which Loman contacted the office. (*Id.* at 11-15). Loman then also addressed the trial court. (*Id.* at 15-24).

{¶17} Finding that Loman had violated his bond by failing to contact his attorney, the trial court sentenced Loman to 12 months imprisonment for Count One of the indictment, breaking and entering, and 12 months imprisonment for the bill of information, possession of drugs. (*Id.* at 27); (Doc. No. 64). The trial court ordered that Loman serve both sentences of imprisonment concurrently. (*Id.*); (*Id.*). The trial court ordered that Loman pay restitution of $60.00 to a victim in a separate case that the State agreed to dismiss as part of the negotiated plea agreement, and that he pay court costs and a $200 fine reflecting a portion of the sale price of the stolen generator. (*Id.* at 28); (*Id.*). Finally, the trial court suspended Loman's operator's license for three years and ordered him to provide a

DNA sample. (*Id.* at 29, 34); (*Id.*). The trial court filed its "journal entry – orders on sentence" the afternoon of the sentencing hearing. (Doc. No. 64).

{¶18} The trial court appointed the state public defender for purposes of appeal of Loman's sentence. (May 8, 2013 Tr. at 30). Loman's new counsel filed a notice of appearance on May 23, 2013. (Doc. No. 80).

{¶19} Loman filed a notice of appeal on May 23, 2013. (Doc. No. 81). He raises one assignment of error for our review.

### Assignment of Error

**Zaccoria Loman received ineffective assistance of counsel when, but for his counsel's having acted in direct contravention of his interests, Mr. Loman would have been subject to a community control sanction under R.C. 2929.13. (May 8, 2013 Sentencing Hearing Transcript, pp. 11, 27; May 8, 2013 Journal Entry).**

{¶20} In his assignment of error, Loman argues that he was denied effective assistance of counsel when his trial counsel called trial counsel's receptionist to testify at the sentencing hearing. The receptionist, who was not cross-examined, testified to only two known contacts that Loman made with trial counsel's office in the eight weeks between the change-of-plea and sentencing hearings. Loman argues that the receptionist's testimony, which established that Loman violated a condition of his bond, allowed the trial court to impose a sentence of imprisonment pursuant to R.C. 2929.13(B)(1)(b)(iii), when without

the bond violation, the trial court would have been required to sentence Loman to community control pursuant to R.C. 2929.13(B)(1)(a).

{¶21} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶22} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶23} Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 142, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Strickland*, 466 U.S. at 694.

{¶24} In *United States v. Cronic*, "the United States Supreme Court created a narrow exception to the *Strickland* requirements, when it determined that prejudice should be *presumed* in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" (Emphasis added.) *State v. Drake*, 8th Dist. Cuyahoga No. 93761, 2010-Ohio-1065, ¶ 8, quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984). "These circumstances include 'the complete denial of counsel * * * at a critical stage of [the accused's] trial.'" *State v. Harris*, 6th Dist. Erie No. E-02-019, 2003-Ohio-5190, ¶ 32, quoting *Cronic* at 659. Other circumstances include when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" and when the accused has been "denied the right of effective cross-examination." *Cronic* at 659. The Supreme Court explained that even a fully competent attorney cannot provide effective representation in circumstances like those:

> **Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.**

*Id.* at 659-660. *See also State v. Jackson*, 8th Dist. Cuyahoga No. 92365, 2009-Ohio-4995, ¶ 2.

**{¶25}** Loman argues that by calling trial counsel's receptionist at the sentencing hearing, trial counsel ceased functioning as Loman's counsel. Loman argues that this resulted in him being denied cross-examination of the receptionist. For these reasons, Loman argues he was denied effective assistance of counsel. Although he does not say so explicitly, Loman appears to argue that his case falls under the narrow circumstances outlined by the Court in *Cronic*, effectively establishing a presumption of prejudice under the second prong of *Strickland*'s two-part test. For the reasons that follow, we agree that this case should be governed by the *Cronic* decision.

**{¶26}** Key to our application of *Cronic* is what took place at the sentencing hearing. Because it is critical to the unique circumstances of this case, we first note the statute under which the trial court sentenced Loman. Loman pled guilty to two fifth-degree felonies. The version of R.C. 2929.13 in effect at the time of Loman's offenses,[1] therefore, *required* that the trial court sentence Loman to "a community control sanction of at least one year's duration" so long as the three factors found in R.C. 2929.13(B)(1)(a) applied and so long as one of the four

---

[1] While R.C. 2929.13(B)(1) has been amended since Loman's offenses, the amendments are not subject to application under R.C. 1.58 because they do not reduce the sentence to which Loman is subject; therefore, we apply the version of R.C. 2929.13 in effect at the time of Loman's offenses. *See* R.C. 1.58(B); *State v. Rose*, 3d Dist. Marion No. 9-05-43, 2006-Ohio-3071, ¶ 9, fn. 1, citing *State v. Brooks*, 163 Ohio App.3d 241, 2005-Ohio-4728, ¶ 15 (4th Dist.). Loman makes no argument to the contrary.

factors found in R.C. 2929.13(B)(1)(b) did not apply. R.C. 2929.13(B), as amended by Am.Sub.H.B. No. 262 (2012).[2] *See also State v. Spencer*, 3d Dist. Hardin Nos. 6-12-15 and 6-12-16, 2013-Ohio-137, ¶ 21. If one of the factors found in R.C. 2929.13(B)(1)(b) did apply, the trial court had "discretion to impose a prison term." R.C. 2929.13(B)(1)(b). *See also Spencer* at ¶ 21. One of the factors under R.C. 2929.13(B)(1)(b), *and the only factor applicable to this case*, is: "[t]he offender violated a term of the conditions of bond as set by the court." R.C. 2929.13(B)(1)(b)(iii). *See also Spencer* at ¶ 21.[3]

{¶27} Although it is not entirely clear from the record how the trial court became aware of this possibility, a review of the transcript from the sentencing hearing reveals that the trial court suspected Loman had violated his bond by not contacting his attorney once each week between the March 13, 2013 change-of-plea hearing and the May 8, 2013 sentencing hearing. In any event, the trial court directed Loman's counsel to provide the court with whatever information was necessary to answer the question:

> **[Trial Court]:** **[Trial counsel], in mitigation of the imposition of sentence and then I do have a question for the Defendant and I'll let you know what it's gonna be in advance, [trial counsel], so you might advise it. The Defendant, from my**

---

[2] Subsequent references to R.C. 2929.13 in this opinion are to the version as amended by Am.Sub.H.B. No. 262 (2012).

[3] For clarification, we note that while it was clear that Loman also failed to properly keep in contact with those responsible for preparing his PSI, cooperation with the PSI process was never made a specific condition of bond. As a result, Loman's failure to cooperate with the PSI process did not constitute a bond violation rendering Loman eligible for prison in this case pursuant to R.C. 2929.13(B)(1)(b)(iii).

**understanding, failed to keep in contact with your office at least each week and sort of disappeared off the face of the earth for awhile, from the time of his plea change until now. And there was a document filed which lead [sic] to the bench warrant. And I say that because it's my understanding based upon that activity of the Defendant from date of the plea change until now that in various ways and including his failure to contact your office and failure to participate in the PSI process, that he violated conditions of his bond. So I encourage you to address that at some point in time and so I wanted to sort of invite that litigation and/or commentary.**

**[Trial Counsel]:** **Well, Your Honor, again my observation is the fact that he did not keep his appointment with the PSI investigator would not constitute a violation of his bond.**

**[Trial Court]:** **Well, his failure to contact you once a week would.**

**[Trial Counsel]:** **That could be and I guess that puts me in an interesting position then. Maybe I need to call my staff up here to give testimony.**

**[Trial Court]:** **No.**

**[Trial Counsel]:** **Can I have an adjournment and I'll bring my office manager up to do that.**

**[Trial Court]:** **The report from the PSI writer, which was attached to the motion you had in front of you?**

**[Trial Counsel]:** **Yes. And I don't see nothing in there that specifically says that he failed to contact us, if**

> **you're referring to the memorandum of [the PSI writer], at least the way I read it.**
>
> **[Trial Court]:** **Notified your office on April 2, 2013.** ***I'm going to want it presented as to what dates of contact he had with your office*****? [sic]**
>
> **[Trial Counsel]:** **Well, I won't be able to provide the Court that. My office manager might. I need an adjournment to have her come up.**
>
> **[Trial Court]:** **Court will be in brief recess. Let me know when you're ready.**

(Emphasis added.) (May 8, 2013 Tr. at 9-10).

**{¶28}** The trial court reconvened, and trial counsel called his office receptionist, who was sworn in and testified that she had reviewed Loman's entire case file before testifying. (*Id.* at 11-12). She identified one exhibit during her testimony—a pink "while you were out" slip of paper documenting a message that Loman left with the receptionist for his counsel on April 29, 2013. (*Id.* at 13, D's Ex. A). She testified that this one slip was the only "while you were out" slip in Loman's file postdating March 13, 2013; however, she testified that Loman had also contacted the office that morning, and that contact was not documented on a "while you were out" slip. (*Id.* at 12-14). The receptionist testified that, in all, Loman contacted the office twice between March 13, 2013 and May 8, 2013. (*Id.* at 11-15). *During the receptionist's testimony, much of the questioning was conducted by the trial court.* (*See id.*).

{¶29} *After* Loman's trial counsel's office receptionist testified, Loman's trial counsel allowed Loman to testify, ostensibly in order to identify at least one more contact with trial counsel's office:

> **[Trial Counsel]:** **Mr. Loman, you heard the testimony from [the receptionist]. Were you in contact with our office at any other times?**
>
> **[Loman]:** **I'm not saying,– I don't know. I think one (1) more time because [the PSI writer] had gotten a hold of your office about the PSI and you guys contacted me like a week, the week before that pink slip was made or maybe two (2) weeks before. It was either a week or two (2) weeks. There was one (1) other time. I don't know whether I got a record of it, but I'm pretty sure I deleted the voice mail that you guys left me because I returned you guys' [sic] call.**
>
> **[Trial Counsel]:** **So it would be your position that there was at least one (1) more time?**
>
> **[Loman]:** **Yeah.**

(*Id.* at 16).

{¶30} Loman also testified that he was unable to assist in the completion of his updated PSI because of childcare issues, his work schedule, and his cell phone service being discontinued because he did not pay his bill. (*Id.* at 16-21). Loman's trial counsel asked him to explain to the trial court why he thought he was a good candidate for community control. (*Id.* at 23). Loman said that he was sorry for not cooperating in the completion of his updated PSI; he had been an

upstanding citizen before he turned 25 two years ago; he had a son and shared parenting time; and, he had been trying to work full time. (*Id.* at 23-24). The trial court then questioned Loman about his criminal history. (*Id.* at 24-27).

**{¶31}** After hearing from Loman, the trial court sentenced him to, among other things, 12 months imprisonment for Count One of the indictment, breaking and entering, and 12 months imprisonment for the bill of information, possession of drugs, to be run concurrently. (*Id.* at 27). *Notably, the trial court specifically stated that its sentence in this regard was "based upon the Defendant's violation of his bond and noncompliance with conditions * * *."* (Emphasis added.) (*Id.*).

**{¶32}** After the trial court sentenced Loman, the following exchange took place between the trial court and Loman's trial counsel. In the exchange, Loman's trial counsel expressed concerns over his perceived involvement in the trial court's sentencing Loman to imprisonment rather than community control:

> **[Trial Court]:** **Now, do you have a request with respect to appointed counsel for an appeal?**
>
> **[Trial Counsel]:** **I have a conflict of interest since my office was involved in the sentencing and led to the basis for the Court being allowed to send him to prison.**
>
> **\* \* \***
>
> **Well, Your Honor, I have a highly problematic position you're putting me in because the way I interpret what happened this morning, the Court to be able to find the Defendant is**

> **eligible to be sent to prison had to find that he violated conditions of bond, and our office was instrumental in making that finding, and I believe, therefore, I have a direct conflict of interest. And the fact that he now is in prison and I then will be asking the Court to release him from prison would further involve that conflict. So I don't think in any shape or form we should be involved in this case from this point on.**
>
> **[Trial Court]:** **Well, I disagree on the following basis: I allowed you to put on whatever you wanted to put on from your office. But all I had to do was ask the Defendant, which was what I was gonna do, was ask the Defendant what dates he contacted you and he would have told me because he doesn't have the Fifth Amendment right at that point in terms of sentencing. He would have told me the dates that he contacted you, which were basically two (2) or three (3) over the eight (8) weeks necessary.**

(*Id.* at 30-32).

{¶33} In sum, it is clear that the trial court directed Loman's trial counsel to present information, evidence, or testimony at the sentencing hearing that was adverse to Loman. Specifically, the adverse testimony confirmed that Loman violated the condition of his bond requiring that he contact his attorney once each week, which satisfied one of the factors under R.C. 2929.13(B)(1)(b) that triggered the trial court's discretion to impose prison rather than community control. *See* R.C. 2929.13(B)(1)(b)(iii). These circumstances are like those described in *Cronic*, in which "the likelihood that any lawyer, even a fully

- 18 -

competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." 466 U.S. at 658-659. Even Loman's trial counsel recognized the "highly problematic position" in which the trial court put him. (May 8, 2013 Tr. at 31).

{¶34} Specifically, we conclude that two of the circumstances described in *Cronic* were present in this case. First, *Cronic* applies to the complete denial of counsel at a "critical stage." *Cronic* at 659. "Sentencing is a 'critical stage' of a criminal proceeding." *Jackson*, 2009-Ohio-4995, at ¶ 2, citing *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977). At the moment Loman's defense counsel presented testimony adverse to his client, he ceased functioning as Loman's counsel. Therefore, Loman was denied counsel at sentencing—a "critical stage" of his criminal proceeding.

{¶35} Second, Loman was left without an advocate to cross-examine Loman's counsel's office receptionist, and the denial of "the right of effective cross-examination" is a circumstance warranting application of *Cronic*. *Cronic* at 659. Moreover, in choosing to perhaps mitigate the situation by having Loman testify to additional efforts to contact him—*only after* the damaging testimony from the office receptionist—Loman's trial counsel's actions at the sentencing hearing cannot be chalked up as mere trial strategy. As a result of these circumstances, Loman was undoubtedly prejudiced by being exposed to and

receiving a prison sentence rather than merely community control. *See id.* at 658-660; *State v. Oliver*, 9th Dist. Summit No. 26446, 2013-Ohio-1977, ¶ 15.

**{¶36}** Based on the foregoing, we conclude that these circumstances, which were created from the inception by the trial court in setting this particular condition of bond and which were then pursued under the continued direction of the trial court in conducting the sentencing hearing, resulted in Loman being denied the effective assistance of his counsel under *Cronic* and *Strickland*. *See Oliver* at ¶ 19.

**{¶37}** Our conclusion is supported by and similar to the Ninth District Court of Appeals' decision in *Oliver*, relied on by Loman. In that case, after the trial court imposed its sentence, Oliver, through counsel, informed the trial court that he wished to withdraw his guilty plea. *Oliver* at ¶ 6. Oliver's counsel and the trial court then questioned Oliver as to his request, and Oliver explained that his attorney coerced him into pleading guilty, "that his attorney would not give him a chance to speak or ask questions, and that his attorney accused him of 'acting like a kid' and asked him if he wanted a 'lollipop.'" *Id.* The trial court then swore in Oliver's counsel who testified to conversations he had with Oliver and refuted Oliver's contention that he had coerced Oliver into pleading guilty. *Id.* at ¶ 7. The trial court ultimately denied Oliver's motion to withdraw his guilty plea. *Id.* at ¶ 8.

**{¶38}** Oliver appealed to the Ninth District, arguing that the trial court denied him effective assistance of counsel when it allowed his counsel to testify, without the opportunity for cross-examination, and to rebut many of Oliver's reasons for requesting the withdrawal of his guilty plea. *Id.* at ¶ 9-10. The Ninth District framed the question this way: "whether the trial court completely denied Mr. Oliver his right to the effective assistance of counsel when it caused his attorney to testify against him, without first allowing Mr. Oliver time to obtain new counsel for purposes of representation and cross-examination." *Id.* at ¶ 13. Relying on *Cronic*, the Ninth District concluded, "In directing defense counsel to testify against his client's interests, without the opportunity for cross-examination, the trial court completely denied Mr. Oliver the assistance of his counsel." *Id.* at ¶ 19. It reversed and remanded for Oliver to be appointed new counsel and for a rehearing on Oliver's motion to withdraw his guilty plea. *Id.* at ¶ 20.

**{¶39}** Although it was Oliver's trial counsel who testified and not his trial counsel's receptionist, and although it was the trial court in *Oliver* that called Oliver's trial counsel as a witness, we find persuasive the Ninth District's conclusion of law in *Oliver*. Indeed, in both *Oliver* and this case, the defendants were left without counsel and denied the right of cross-examination when their attorneys presented testimony against their interests. Moreover, in both cases, the trial courts' directions led to the defendants being left without effective assistance

of counsel. Also in both cases, there was a "'breakdown of the adversarial process'" because the defendants' attorneys offered testimony "directly and indisputably *against* the interests of" their clients, and neither defendant had the opportunity for cross-examination. (Emphasis sic.) *Id.* at ¶ 18, quoting *Cronic*, 466 U.S. at 657. For those reasons, we find *Oliver*'s holding persuasive and worthy of application in this case.

{¶40} Finally, we must respectfully disagree with the trial court's comment at sentencing that the court would have obtained the information necessary to violate Loman's bond directly from Loman anyway, without any assistance from Loman's counsel, because Loman had no Fifth Amendment rights at sentencing. Contrary to the trial court's statement at the sentencing hearing, the U.S. Constitution's Fifth Amendment generally applies at sentencing.

{¶41} "A defendant retains the right to invoke his Fifth Amendment privilege against compelled self-incrimination when he has pled guilty but sentence is yet to be imposed. * * * Thus, a guilty plea is not a waiver of the privilege at sentencing." *State v. Hobbs*, 8th Dist. Cuyahoga No. 84146, 2005-Ohio-3416, ¶ 39, citing *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307 (1999). *See also State v. Clunen*, 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 14 ("A defendant has a right to remain silent at sentencing even after a guilty plea * * *."), citing *State v. Donald*, 7th Dist. Mahoning No. 08 MA 154,

2009-Ohio-4638, ¶ 11 and *Mitchell* at 321. However, "where there can be no further incrimination, there is no basis for the assertion of the [Fifth Amendment] privilege." *Mitchell* at 326. "[T]hat principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final." *Id.* "If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." *Id.*

{¶42} This case was one where adverse consequences *could* have been—and were—visited upon the defendant by reason of further testimony at the sentencing hearing. In other words, this was not a case where, before sentencing, the sentence had been fixed. To the contrary, Loman faced sentences of either community control or prison. Absent application of one of the factors found in R.C. 2929.13(B)(1)(b), the trial court was required to sentence Loman to community control, assuming the factors of R.C. 2929.13(B)(1)(a) applied. *See* R.C. 2929.13(B)(1)(a). The State recommended a sentence of community control, and Loman appeared to be in line for a sentence of community control until the trial court instructed Loman's trial counsel, "I'm going to want it presented as to what dates of contact he had with your office? [sic]."[4] (May 8, 2013 Tr. at 10).

---

[4] It is unclear from the record how the trial court came to believe that Loman may have violated the condition of his bond requiring him to contact his attorney once each week. Neither the February 12, 2013 PSI nor the PSI writer's April 19, 2013 memorandum mentioned a failure on Loman's part to contact his attorney once each week. The PSI writer did mention in the February 12, 2013 PSI, however, that she "was advised by the Auglaize County Public Defender's Office that the offender had failed to continue signing in at the Auglaize County Sheriff's Office as mandated by the conditions of Loman's Own Recognizance

Therefore, Loman still had something to lose at the sentencing hearing, and he retained his Fifth Amendment privilege there.

{¶43} Nor are we persuaded by the State's argument that Loman's admission at the sentencing hearing that he contacted his attorney fewer than one time each week served as an independent basis for the bond-violation finding for purposes of R.C. 2929.13(B)(1)(b)(iii). By the time Loman made that admission, the breakdown in the adversarial process and the circumstances described in *Cronic* had already occurred.

{¶44} For the reasons above, we hold that, under the specific circumstances of this case, by setting this particular condition of bond and then directing Loman's trial counsel to provide the information, evidence, or testimony necessary to establish the violation of that bond condition against Loman's interests, the trial court denied Loman the effective assistance of his counsel.

{¶45} In conclusion, we are compelled to take this opportunity to express our concerns about the troubling consequences that a bond condition such as the one in this case can have. Generally, "'Placing conditions on bond is a power specifically granted to the trial court under Crim.R. 46,'" and a trial court "may determine what the conditions of a bond are." *State v. Sutton*, 6th Dist. Lucas No. L-03-1104, 2004-Ohio-2679, ¶ 18, quoting *State v. Shearer*, 6th Dist. Wood No.

---

bond in the Instant Offense." The trial court, however, did not revoke Loman's bond based on that separate condition. (*See* Doc. Nos. 59, 63); (PSI).

- 24 -

WD-98-078, 1999 WL 1203785, *3 (Dec. 17, 1999). Trial courts, such as the trial court in this case, sometimes impose bond conditions requiring that defendants contact their attorneys regularly. *See, e.g., State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 51.

{¶46} At the outset, we question the extent to which requiring a defendant to contact his own attorney as a condition of bond is directly relevant to either the public safety or the assurance that the defendant will properly appear in court as scheduled, particularly where, as here, another condition of bond requires the defendant to "check in with the * * * Sheriff's Office, IN PERSON, once each week." (Emphasis sic.) (Doc. No. 10). Nevertheless, we understand that there may be other useful reasons advancing the effective administration of a hearing docket where all parties are present with counsel and prepared to proceed. For these reasons, we decline at this time to make any broad and restrictive holding regarding the constitutional validity of such a requirement.

{¶47} Notwithstanding this restraint, it seems to us that this case certainly highlights the inherently problematic nature of such a condition which automatically places the defense attorney in the position of being a potential witness and perhaps the only source of information necessary to establish any alleged violation of the condition. Needless to say, as noted by Loman's trial counsel in this case, such a bond condition also carries a high probability for

placing any defense attorney in an untenable ethical situation under the disciplinary rules. Accordingly, we would suggest that a trial court find better ways to ensure public safety and the defendant's appearance in compliance with prior court orders at any scheduled hearings. *See* Crim.R. 46(B).

**{¶48}** For the reasons above, we sustain Loman's assignment of error. We reverse the judgment of the trial court, vacate Loman's sentence, and remand for the appointment of new trial counsel and for a resentencing hearing conducted in conformity with the holding of this opinion and with R.C. 2929.13. At the resentencing hearing, the trial court may not consider information, evidence, or testimony obtained at the original, May 8, 2013 sentencing hearing in contravention of Loman's right to effective assistance of counsel or his Fifth Amendment privilege, including Loman's statements and the testimony of Loman's counsel's office receptionist.

**{¶49}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment and vacate the sentence of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed, Sentence*
*Vacated and Cause Remanded*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**