[Cite as *State v. Miller*, 2014-Ohio-5706.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-G-3193** |
| RAYMOND F. MILLER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 13 C 000085.

Judgment: Affirmed.

*James R. Flaiz*, Geauga County Prosecutor, and *Christopher J. Joyce*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Paul A. Mancino, Jr.,* Mancino, Mancino & Mancino, 75 Public Square, Suite #1016, Cleveland, OH 44113-2098 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} This appeal is from the sentencing judgment in a criminal action before the Geauga County Court of Common Pleas. Appellant, Raymond F. Miller, seeks reversal of his conviction for rape on the basis that his guilty plea was not entered knowingly and voluntarily. Specifically, he asserts that the trial court failed to explain a misstatement in his plea agreement as to his eligibility for judicial release. For the following reasons, we uphold appellant's conviction and sentence.

{¶2} In June 2013, appellant was indicted on two counts of rape, gross sexual imposition, sexual battery, and kidnapping. Both rape counts were predicated upon the allegation that appellant purposefully compelled the victim to submit by force or threat of force. In addition, the kidnapping count had a specification that appellant kidnapped the victim with a sexual motivation.

{¶3} Initially, appellant pled not guilty to all five counts. However, after the case was pending for approximately four months, appellant and the state negotiated a plea agreement on all charges. The terms of this agreement were contained in the following paragraph:

{¶4} "The Defendant will plead guilty to Count 1 of the indictment, to wit: Rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree. The State will seek leave to dismiss Count 2, Count 3 and its attendant Specification, Count 4, and Count 5 at the time of sentencing. In the event the Defendant becomes eligible for, and applies for, Judicial Release in the future, the State agrees that it will not take a position on his release provided his institutional record while incarcerated does not warrant concern. The parties request a Presentence Investigation and Victim Impact Statement. The State agrees to stand silent at Sentencing."

{¶5} At the outset of the change-of-plea hearing, the assistant prosecutor read the foregoing paragraph verbatim into the record. Regarding the "judicial release" term, the assistant prosecutor did not give any explanation as to the meaning of the provision. Moreover, the trial court made no reference to the "judicial release" subject as part of its Crim.R. 11 colloquy with appellant.

{¶6} In discussing the potential penalties for the sole remaining count of rape,

2

the trial court did not expressly note that appellant could not be sentenced to community control. However, the court did expressly inform him that, since rape was a first-degree felony, a prison term of at least three years was mandatory. At the close of the Crim.R. 11 colloquy, the court specifically asked appellant whether he had committed the crime of rape, and appellant replied affirmatively. Therefore, the trial court accepted the guilty plea.

{¶7} A separate sentencing hearing was held in February 2014. In addressing appellant himself, the trial court asked him a series of questions designed to see if he was remorseful. During this colloquy, the trial court again asked appellant what crime he had committed, and appellant again stated that he forced the victim to have sex with him. After hearing oral arguments from appellant's counsel, the trial court initially tried to sentence him to a five-year term of community control. But, upon holding a sidebar with both attorneys, the trial court informed appellant that the imposition of community control was not permissible under the governing law. Accordingly, the court sentenced him to a mandatory term of three years and imposed a $3,000 fine.

{¶8} One week after the sentencing proceeding, the trial court issued its final judgment restating the foregoing sentence. In appealing that judgment, appellant raises three assignments of error for review:

{¶9} "[1.] Defendant was denied due process of law when he was given conflicting and confusing advice concerning eligibility for a community control sanction or judicial release.

{¶10} "[2.] Defendant was denied due process of law when the court imposed a fine in its judgment entry of sentencing when it did not already pronounce a fine at the

3

time of sentence.

{¶11} "[3.] Defendant was denied his Fifth Amendment rights when the court coerced defendant to speak at sentencing."

{¶12} Under his first assignment, appellant contends that his guilty plea must be declared void because the procedure the trial court employed during the change-of-plea hearing was deficient in two respects. First, he argues that the trial court failed to inform him that, notwithstanding the terms of the plea agreement, he would never be eligible for judicial release. Second, he maintains that the trial court made conflicting assertions concerning whether he was eligible for community control sanctions.

{¶13} Crim.R. 11 governs the entry and effect of all possible pleas in a criminal action. As to the entry of a guilty plea in a felony case, Crim.R. 11(C)(2) provides:

{¶14} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

{¶15} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶16} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶17} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront

4

witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶18} A plea of guilty cannot be made knowingly and voluntarily unless the trial court has complied with the foregoing requirements. *State v. Silvers*, 181 Ohio App.3d 26, 2009-Ohio-687, ¶10 (2d Dist.). In turn, if a guilty plea is not made both voluntarily and knowingly, its acceptance results in a violation of the defendant's due process rights. *Id.*, ¶9, citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).

{¶19} As to the waiver of federal constitutional rights under Crim.R. 11(C)(2)(c), strict compliance with the rule is necessary. Specifically, there must be a meaningful dialogue in which the trial court explains the cited constitutional rights in a manner that the defendant can understand. *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶7, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). In relation to the other requirements of the rule, a different standard applies:

{¶20} "Under the broader standard for rights not protected by the constitution, substantial compliance with Crim.R. 11(C) is sufficient. *State v. Nero* (1990), 56 Ohio St.3d 106, * * *. 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' Id. at 108, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, * * *. '[I]f it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance.' *State v. Caplinger* (1995), 105 Ohio App.3d 567, 572, * * *, citing *Nero*,

5

supra at 108-109." *Ealom*, 2009-Ohio-1365, at ¶8.

{**¶21**} When a defendant challenges the propriety of a guilty plea on the grounds that it was not voluntarily, knowingly or intelligently made, he must show that any error by the trial court had a prejudicial effect. *State v. Lauth*, 11th Dist. Trumbull No. 2012-T-0067, 2013-Ohio-3478, ¶18, quoting *Nero*, 55 Ohio St.3d at 108. The test for deciding prejudicial effect is whether the guilty plea still would have been made notwithstanding the error. *Id.*

{**¶22**} As noted above, Crim.R. 11(C)(2)(a) provides that, in determining whether a defendant has acted voluntarily in pleading guilty, the trial court must establish, when applicable, that the defendant understands he is ineligible to have a community control sanction substituted for a prison term. In the present case, the trial court failed to inform appellant during the change-of-plea hearing that he was ineligible for community control sanctions based upon his conviction for rape. However, the trial court expressly stated to him that his conviction dictated he must serve a prison term of at least three years. In applying Crim.R. 11(C)(2)(a), this court has concluded that reference to the necessity of a mandatory prison term constitutes substantial compliance with the "community control sanctions" aspect of the rule. *Id.* at ¶22.

{**¶23**} Notwithstanding the propriety of the change-of-plea hearing, appellant still contends that there was a possibility of confusion regarding his eligibility for community control sanctions in light of the fact that the trial court initially tried to impose that type of penalty on him during the sentencing hearing. But, given that the trial court's incorrect statement as to applicability of community control sanctions was not made until after the change-of-plea was concluded, it could not have affected appellant's understanding as

to the possible penalties for a rape conviction at the time he made his decision to plead guilty. Accordingly, the record does not support appellant's contention that conflicting statements concerning his eligibility for community control sanctions rendered his guilty plea invalid.

{¶24} Unlike community control sanctions, Crim.R. 11(C)(2)(a) does not contain any reference to judicial release. As a result, a trial court has no obligation to advise a defendant on his potential eligibility for judicial release as part of the Crim.R. 11 colloquy for acceptance of a guilty plea. *See State v. Oliver*, 6th Dist. Sandusky No. S-10-040, 2011-Ohio-5305, ¶11; *State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515, ¶22-25 (2nd Dist.). An exception to the foregoing rule has been recognized, though. If an incorrect statement as to the defendant's eligibility for judicial release is made as part of the change-of-plea proceeding, and the trial court takes no steps to correct the misstatement, the plea will be deemed invalid under Crim.R. 11(C) unless there has been no prejudicial effect. *Oliver*, 2011-Ohio-5305, at ¶13; *Silvers*, 2009-Ohio-687, at ¶14-15; *State v. Hendrix*, 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, ¶31-32.

{¶25} As noted above, the written plea agreement has one sentence regarding the issue of judicial release. That sentence provides that, "[i]n the event the Defendant becomes eligible for" judicial release in the future, the state would not oppose an application provided appellant behaves appropriately while in prison. The quoted phrase "becomes eligible" indicates that at the time the plea agreement was executed, the parties were aware that under existing law, appellant was not eligible for judicial release.

**{¶26}** As so construed, the quoted phrase is consistent with the governing statutory law. Under the terms of the plea agreement, appellant pled guilty to one count of rape. Pursuant to R.C. 2929.13(F)(2), a mandatory prison term must be imposed for "any rape regardless of whether force was involved and regardless of the age of the victim." As a consequence of having to serve a mandatory term on the sole remaining charge, appellant is not presently eligible for judicial release and will not be absent a change in law. *See* R.C. 2929.20(A).

**{¶27}** Given that the quoted phrase correctly infers that appellant was ineligible for judicial release as of the date of the plea agreement, it follows that the chosen language was intended to apply if the statute governing eligibility for judicial release, R.C. 2929.20, is amended during appellant's prison term.

**{¶28}** To the extent that the "release" term of the plea agreement does not state or infer that appellant will necessarily become eligible for judicial release while he is incarcerated, it does not contain an incorrect statement concerning the subject. In addition, since the prosecutor simply read the entire one-paragraph agreement into the record verbatim during the plea hearing, no incorrect statement was made at that time. Therefore, the trial court had no duty under Crim.R. 11(C) to question appellant as to whether he understood that he would not be eligible for judicial release unless R.C. 2929.20 is amended.

**{¶29}** As appellant has failed to demonstrate any error by the trial court in relation to the required plea colloquy under Crim.R. 11(C), the record supports the conclusion that his guilty plea was entered knowingly, intelligently and voluntarily. For this reason, his first assignment lacks merit.

{¶30} Under his second assignment, appellant challenges the propriety of the procedure the trial court employed in imposing a $3,000 fine along with the three-year prison term. He contends that the fine cannot be upheld because there was a direct conflict between the order set forth in the final sentencing judgment and the oral pronouncement made during the sentencing hearing. According to him, although the final judgment referenced the fine, the trial court did not refer to it in orally imposing his sentence at the close of the hearing.

{¶31} Appellant's argument on this point is predicated upon the fact that the trial court made two separate pronouncements regarding his prison term during the hearing. The first pronouncement was made after the trial court heard appellant's statements as to his remorse for his actions and oral arguments from defense counsel. At that time, the trial court expressly stated that appellant would be fined $3,000 and sentenced to five years of community control. While the court indicated that the community control would include four months in the county jail, no reference was made to a separate prison term.

{¶32} However, after the trial court fully explained the conditions of the community control, the assistant prosecutor requested a sidebar conference off the record. When the conference ended, the trial court came back on the record and informed appellant that, since his conviction was for rape, he could not be sentenced to community control. Instead, under the controlling statutory law, a term of imprisonment had to be imposed for that offense. As a result, the trial court pronounced that appellant would serve a three-year prison term in lieu of the community control. In making this oral modification, the court did not refer to the prior imposition of the $3,000 fine.

{¶33} In essence, appellant asserts that, by not citing the $3,000 fine as part of its second pronouncement, the trial court failed to include it as part of the total penalty or sentence on the rape charge. Apparently, it is appellant's position that the trial court was required to repeat the imposition of the $3,000 fine in conjunction with its pronouncement of the three-year prison term.

{¶34} However, in replacing community control with the prison term, the trial court did not intend to modify the entire imposed penalty. Rather, the second pronouncement of "sentence' was limited to that one aspect of the entire penalty. There is nothing to indicate that the court intended to modify the other aspects of its first pronouncement, including the fine, the payment of court costs, and appellant's designation as a Tier III sexual offender.

{¶35} Taken as a whole, the record shows that appellant was given proper oral notification of the $3,000 fine during the sentencing hearing, Thus, as no due process violation occurred, appellant's second assignment is without merit.

{¶36} Under his final assignment, appellant maintains that the trial court violated his Fifth Amendment right against self-incrimination by forcing him to make a statement on his own behalf during the sentencing hearing. He argues that the court required him to admit to raping the victim, and that this admission could be used against him in any subsequent proceeding.

{¶37} The sentencing transcript indicates that, after a brief discussion about the presentencing investigation report, the trial court addressed appellant directly, stating that it, the court, wanted "to hear" specifically from him during the proceeding. As part of its initial instructions to appellant, the trial court emphasized that any statements he

chose to make to the court would have a direct bearing on his sentence:

{¶38} "THE COURT: * * * This is not the time to be shy. This is not the time to be quiet. What you say makes a big difference as to what is going to happen to at least 11 years of your life."

{¶39} After the trial court completed its initial instructions, appellant made a brief statement in which he said he was sorry and he hoped his apology would be accepted. The trial court then engaged appellant in the following colloquy:

{¶40} "THE COURT: What are you sorry for?

{¶41} "THE DEFENDANT: For what I did.

{¶42} "THE COURT: And what is it you did, Mr. Miller?

{¶43} "THE DEFENDANT: I raped a girl.

{¶44} "THE COURT: Okay. You raped somebody. What does that mean?

{¶45} "THE DEFENDANT: I forced somebody to have sex with me.

{¶46} "THE COURT: And what do you mean by 'forced'? Was that person willing?

{¶47} "THE DEFENDANT: No, your Honor.

{¶48} "THE COURT: Did that person give you any indication it's okay to have sex with me?

{¶49} "THE DEFENDANT: No, your Honor.

{¶50} "THE COURT: Did that person give you any clue that it's okay to take me into this shed and knock me down and try to have sex with her?

{¶51} "THE DEFENDANT: No, your Honor.

{¶52} "THE COURT: Did this person say it's okay to rip off my underclothes?

11

{¶53} "THE DEFENDANT: No, your Honor.

{¶54} "THE COURT" What is it you are sorry for?

{¶55} "THE DEFENDANT: I'm sorry for forcing her to have sex with me."

{¶56} Crim.R. 32(A)(1) provides that, prior to the imposition of sentence, a trial court is required to "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." This rule imposes an affirmative duty upon the trial court to inform the defendant of his right of allocution. *State v. Smith*, 8th Dist. Cuyahoga No. 97500, 2012-Ohio-3251, ¶23. In applying this rule, the Eighth Appellate District has held that a trial court is not limited to any specific language in telling the defendant of his right to make a statement. *See Id.* at ¶21, 24.

{¶57} On the other hand, the entry of a guilty plea to specific charges does not necessarily result in a waiver of the defendant's constitutional right against self-incrimination; i.e., the Fifth Amendment right can still be invoked during the sentencing phase. *State v. Loman*, 3d Dist. Auglaize No. 2-13-17, 2014-Ohio-1570, ¶41, citing *Mitchell v. United States*, 526 U.S. 314 (1999). However, the defendant's right against self-incrimination is not implicated when the scope of his statements at sentencing is limited to the exact charge to which he pled guilty. *See State v. Hobbs*, 8th Dist Cuyahoga No. 84146, 2005-Ohio-3416, ¶38, 40.

{¶58} In this case, the scope of appellant's responses to the trial court's queries was limited to the single count of rape to which he agreed to plead guilty. Accordingly, this is not a situation in which the trial court inquired into other possible criminal acts not covered under the guilty plea. Furthermore, although the trial court's questions went

beyond merely informing appellant of his right to allocution, neither appellant nor his trial counsel sought to invoke his Fifth Amendment right throughout the colloquy. Therefore, even if appellant's right against self-incrimination had been implicated by the nature of the trial court's questions, the record supports the conclusion that appellant's responses during the colloquy were made voluntarily.

**{¶59}** To the extent that appellant has failed to establish a violation of his Fifth Amendment right during the sentencing hearing, his third assignment is also not well-taken.

**{¶60}** Consistent with the foregoing analysis, the judgment of the Geauga County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.