[Cite as *State v. Hutsenpiller*, 2024-Ohio-3069.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

CHARLES G. HUTSENPILLER, JR.,

      Defendant-Appellant.

CASE NO. 2023-G-0041

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 C 000283

**O P I N I O N**

Decided: August 12, 2024
Judgment: Reversed; remanded

*James R. Flaiz*, Geauga County Prosecutor, and *Christian A. Bondra*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*R. Robert Umholtz*, Geauga County Public Defender, and *Paul J. Mooney*, Chief Assistant Public Defender, 211 Main Street, Chardon, OH 44024 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Charles G. Hutsenpiller, Jr., appeals the judgment imposing sentence following his guilty plea to one felony and two misdemeanor charges. We reverse the judgment, vacate Hutsenpiller's plea, and remand this matter for further proceedings consistent with this decision.

{¶2} On December 28, 2022, an indictment was filed charging Hutsenpiller with the following six counts: aggravated vehicular assault, a second-degree felony, in violation of R.C. 2903.08(A)(1)(a); vehicular assault, a third-degree felony, in violation of

R.C. 2903.08(A)(2)(b); OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a); driving under OVI suspension, a first-degree misdemeanor, in violation of R.C. 4510.14(A); operation in willful or wanton disregard of the safety of persons or property, a minor misdemeanor, in violation of R.C. 4511.20(A); and lane of travel upon roadways, a minor misdemeanor, in violation of R.C. 4511.25(A).

{¶3} Hutsenpiller initially pleaded not guilty. Thereafter, the parties entered into a plea agreement whereby Hutsenpiller agreed to plead guilty to aggravated vehicular assault, OVI, and driving under OVI suspension, as charged in the indictment, and the state agreed to move to dismiss the remaining three charges. At a change of plea hearing, following a plea colloquy, Hutsenpiller pleaded guilty in accordance with the plea agreement. The trial court accepted Hutsenpiller's plea, ordered a presentence investigation, and set the matter for sentencing.

{¶4} In a judgment of conviction issued on July 26, 2023, on the aggravated vehicular assault count, the trial court sentenced Hutsenpiller to a mandatory seven to 10.5 years in prison, 18 months to three years of post-release control, and a ten-year, class three driver's license suspension. On each of the two misdemeanor counts, the trial court sentenced Hutsenpiller to six months of confinement. The court further imposed license suspensions, fines, and vehicle immobilization relative to the misdemeanor counts. In addition, with respect to the OVI count, the court ordered Hutsenpiller to be assessed by a community addiction service provider and follow all recommendations made. The court then dismissed the remaining counts of the indictment.

2

{¶5} Hutsenpiller filed a delayed notice of appeal with leave of this court, and he now raises two assigned errors for our review. In his first assigned error, Hutsenpiller argues:

{¶6} "Defendant-appellant's change of plea was not entered knowingly, intelligently, and voluntarily as the trial court failed to personally review the potential penalties and provide other notifications."

{¶7} "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 1996-Ohio-179, 527. "'In considering whether a guilty plea was entered knowingly, intelligently, and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.'" *State v. Siler*, 2011-Ohio-2326, ¶ 12 (11th Dist.), quoting *State v. Eckler*, 2009-Ohio-7064, ¶ 48 (4th Dist.).

{¶8} "Crim.R. 11 was adopted in 1973, giving detailed instruction to trial courts on the procedure to follow when accepting pleas." *Veney* at ¶ 7. Crim.R. 11 is meant to ensure "'an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975); *see also State v. Nero*, 56 Ohio St.3d 106, 107 (1990).

3

{¶9} Here, Hutsenpiller challenges the trial court's compliance with Crim.R. 11(C)(2), which pertains to the colloquy required when a defendant enters a guilty or no-contest plea to a felony charge.[1] Crim.R. 11(C)(2) provides:

> In felony cases the court may refuse to accept a plea of guilty . . . and shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . . , and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶10} When a defendant challenges his plea to a felony, a reviewing court engages in a three-prong inquiry: "(1) has the trial court complied with the relevant

---

1. Because Hutsenpiller's convictions resulted from a combined guilty plea to multiple charges in accordance with a plea agreement, reversible error with respect to the colloquy applicable to the felony count requires this court to vacate the plea as to all counts unified by the plea agreement. *Compare State v. Farley*, 2002-Ohio-1142 (1st Dist.) (where guilty pleas on multiple counts resulted from a plea agreement, the trial court's failure to comply with Crim.R. 11 as to one count resulted in vacating all pleas) *with State v. Maggard*, 2011-Ohio-4233, ¶ 21 (1st Dist.) (distinguishing *Farley* where "no plea agreement existed between the state and Maggard, and Maggard pleaded no-contest to all the charges, errors that inured to only some of the counts do not automatically result in the reversal of the pleas on all counts, absent some showing that the defect should be treated more broadly").

4

provision of [Crim.R. 11(C)(2)]? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17. With respect to the second prong, the Ohio Supreme Court has identified two instances where a defendant is relieved of demonstrating prejudice on appeal. First, when a trial court fails to explain the constitutional rights contained in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." (Citation omitted.) *Dangler* at ¶ 14. Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Citation omitted.) *Dangler* at ¶ 15. As to the latter exception, in the context of the "maximum penalty involved," a complete failure occurs when the trial court "makes no mention of a *mandatory* component of a defendant's sentence." (Emphasis in original.) *State v. Willard*, 2021-Ohio-2552, ¶ 95 (11th Dist.).

{¶11} In the present case, Hutsenpiller does not dispute that the trial court properly advised him of the constitutional rights he was waiving by entering his guilty plea to the felony count pursuant to Crim.R. 11(C)(2)(c). Instead, he maintains that the trial court failed to comply with Crim.R. 11(C)(2)(a), pertaining to the colloquy required relative to the nature of the charges, the maximum penalty involved, and the ineligibility for the imposition of community control.

{¶12} The following excerpt from the change-of-plea hearing represents the entirety of the trial court's colloquy relevant to Crim.R. 11(C)(2)(a):

> THE COURT: . . . Let me advise you of the maximum possible
> penalties that could be imposed on you for these. Since the

5

first count that you're pleading to, Aggravated Vehicular Assault, and I'll look to the prosecutor to correct me if I get this wrong, but the maximum fixed term would be an 8 year prison sentence with the possibility of an indefinite term of up to 12 years.

For the OVI count, that's a first degree misdemeanor, so the maximum would be one year in jail with a - - I'm sorry, 6 months in jail with a $1,000 dollar fine. And that also applies to Driving Under the OVI Suspension, that has an unclassified there's something - - any other twists to that one?

[THE STATE]: Yes, your Honor. There's just a few other things I would like to add with the Court's permission.

THE COURT: Please.

[THE STATE]: Just given the fines, highlighting some of the fines for the first charge, it's $1500 dollar maximum fine, mandatory Class 3 license suspension, that's 2 to 10 years.

THE COURT: You mean $15,000.

[THE STATE]: $15,000. Yes. I apologize.

For the OVI that is a mandatory 10 days in jail. The fine given it's the second in ten years is $525 to $1,625. And then that has an unclassified license suspension as well, 1 to 7 years.

And then for the driving under the OVI suspension, that does have a mandatory 3 consecutive days in jail and, again, a fine $250 to $1,000 with the Class 7 suspension as well.

THE COURT: Okay. Thank you for the clarification. So, I'm also required to inform you that if a prison sentence is imposed, you may be subject to post-release control for a period of up to two years at the discretion of the - - I'm sorry. It would be I think it would be three years.

[THE STATE]: I believe that's correct, your Honor.

THE COURT: So post-release control means a period of supervision by the adult parole authority after release from imprisonment. If you violate a post-release control sanction all of the following might apply: First, the adult parole authority may impose a more restrictive post-release control sanction.

6

Secondly, the parole board could increase the duration of the post-release control. Third, the parole board could impose an additional prison term of up to one-half of the original sentence not to exceed nine months for each violation. And lastly, if the violation of a post-release control sanction is also a felony, you may be sentenced for the new felony and the court may impose an additional prison term of either 12 months or the time remaining on post-release control whichever is greater and that has to be run consecutively.

Do you think we got the three years on the post-release control, correct?

[THE STATE]: That is correct, Judge. It's just it does have a mandatory minimum of 18 months on that as well.

THE COURT: Thank you for that.

[THE STATE]: Uh-huh.

**{¶13}** Based on the significant deficiencies in this colloquy, as discussed below, with respect to the aggravated vehicular assault count, the trial court completely failed to comply with the requirement in Crim.R. 11(C)(2)(a) that it "address the defendant personally . . . and . . . determin[e] that the defendant is making the plea . . . with understanding . . . of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

### Duty to Personally Address the Defendant and Ensure the Defendant's Understanding of the Maximum Penalty

**{¶14}** In reviewing whether a plea was knowingly and voluntarily entered, we focus on the dialogue between the court and the defendant to determine whether the defendant understood the consequences of his plea. *Dangler*, 2020-Ohio-2765, at ¶ 12. However, the portion of the colloquy pertaining to Crim.R. 11(C)(2)(a), reproduced above, consisted of a conversation *between the trial court and the state*. At no time during this

7

Case No. 2023-G-0041

portion of the colloquy did the trial court inquire of Hutsenpiller whether he understood the maximum penalty involved for the aggravated vehicular assault count. Although, in other contexts, inquiry of a defendant's understanding of the maximum penalty while it is being explained may not be required, here the trial court repeatedly shifted the focus of its statements to the state. On this record, we cannot presume Hutsenpiller's understanding of the maximum penalty from his silence.

{¶15} The dissent reads the above portion of the plea colloquy as addressing Hutsenpiller. To the extent that we could read the trial court's above statements as addressing Hutsenpiller, as opposed to addressing the state, the trial court made several conflicting statements and omissions with respect to the maximum penalty and mandatory nature of the sentence, without attempting to assess Hutsenpiller's understanding of these issues during this portion of the plea colloquy, as addressed below.

**The Maximum Sentence and the Reagan Tokes Law**

{¶16} First, the trial court failed to adequately explain the nature of the maximum prison term involved for the aggravated vehicular assault count, which was subject to the Reagan Tokes Law.

{¶17} "The 'Reagan Tokes Law,' which became effective in March 2019, requires that for certain first- and second-degree felony offenses, a sentencing court impose on the offender an indefinite sentence consisting of a minimum and a maximum prison term. There is a presumption that the offender will be released from incarceration after serving the minimum prison term. But if that presumption is rebutted, the Ohio Department of Rehabilitation and Correction ("DRC") may maintain the offender's incarceration up to the maximum prison term set by the trial court." *State v. Hacker*, 2023-Ohio-2535, ¶ 1.

Case No. 2023-G-0041

{¶18} Thus, where the maximum sentence is a non-life felony indefinite prison term, *the maximum sentence for purposes of Crim.R. 11(C) consists of a minimum and maximum term for purposes of the Reagan Tokes Law*, and is subject to the following provisions: (1) an offender is rebuttably presumed "to be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;" (2) the DRC may rebut this presumption if, at a hearing held under R.C. 2967.271, the DRC "makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;" (3) if, at such a hearing, the DRC makes the specified determinations and rebuts the presumption, the DRC "may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the [DRC] determines to be reasonable, subject to the limitation specified" in R.C. 2967.271; (4) the DRC may make the specified determinations and maintain the offender's incarceration as described above more than one time, "subject to the limitation specified in" R.C. 2967.271; and "if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term." *See* R.C. 2929.19(B)(2)(c).

{¶19} Here, the portion of the colloquy regarding the maximum prison term for the aggravated vehicular assault count consisted solely of the trial court's statement that "the

9

maximum fixed term would be an 8 year prison sentence with the possibility of an indefinite term of up to 12 years."

{¶20} In *State v. Amin*, 2023-Ohio-3761 (11th Dist.), this court vacated the plea of a defendant who was advised as to the maximum sentence subject to the Reagan Tokes Law by the prosecutor, instead of the trial court, at the plea hearing. *See Amin* at ¶ 13. We also found the substance of the notification insufficient. There, the prosecutor stated that the offender "faced a 'definite' prison sentence of between 2 and 8 years." *Id.* at ¶ 14. "Then, after advising [the defendant] that there was a presumption for prison but that prison would not be mandatory, the prosecutor stated that, under the Reagan Tokes law, [the defendant] faced a 'potential for indefinite prison term maximum' of up to 12 years." *Id.* "No explanation was given [the defendant] as to how a definite prison sentence of up to 8 years was consistent with an indefinite prison sentence of up to 12 years or what was the legal significance of being 'under the Reagan Tokes law.'" *Id.* Although the offender "responded to the court that she understood the prosecutor's advisement as to what the maximum penalty was[, it was] not at all clear that her 'understanding' properly reflected the operation of the Reagan Tokes law." *Id.*

{¶21} Similarly, here, the trial court gave no explanation of how a "maximum fixed term" of 8 years was consistent with a "possibility of an indefinite term of up to 12 years." Neither the court nor the prosecutor mentioned the applicable provisions of the Reagan Tokes Law that controlled this prison term. Nor did the trial court attempt to ascertain Hutsenpiller's understanding of the possible maximum term.

{¶22} The dissent maintains that the trial court's statement that "the maximum fixed term would be an 8 year prison sentence with the possibility of an indefinite term of

10

up to 12 years" was "an accurate statement of the possible maximum indefinite sentence appellant faced." However, the eight-year prison term referenced by the trial court was not a "maximum fixed term." Instead, it was the stated minimum term of the maximum indefinite term that the court could impose of eight to twelve years. Thus, we disagree with the dissent on this issue, and conclude that the trial court's explanation of the maximum prison term was wholly deficient.

{¶23} Further, we acknowledge that this court has rejected the argument that the R.C. 2929.19(B)(2)(c) notifications as to the Reagan Tokes Law, when applicable, must be given at the plea colloquy. *See State v. Jones*, 2024-Ohio-2034, ¶ 27 (11th Dist.).[2] While R.C. 2929.19(B), by its terms, pertains to notifications that a trial court must give a defendant at sentencing, (which we agree with the dissent did not occur in this case), the prudent course would be to provide these notifications during the plea colloquy to ensure a defendant's understanding of the nature of the maximum sentence.

{¶24} Moreover, we emphasize that the maximum term of imprisonment under the Reagan Tokes Law consists of both a stated minimum term and a maximum term. Despite the dissent's statement to the contrary, we take no issue "with the trial court's not explaining that if [it] sentenced appellant to a lesser term, that the indefinite prison term imposed under the Reagan Tokes Law would be an additional 'fifty per cent of that term.'" Nowhere within this opinion do we hold that a trial court must ascertain whether a defendant is aware of every lesser penalty a court could impose. Instead, the court must

_____

2. This author is not in agreement with the *Jones* holding, as I believe that the notifications set forth in R.C. 2929.19(B)(2)(c) are essential to an understanding of the maximum penalty. Nonetheless, as a majority of this court has rejected this position absent further authority requiring such notifications be given at the plea hearing, I simply note my disagreement and apply our precedent.

11

Case No. 2023-G-0041

determine that the defendant is making the plea with an understanding of the maximum penalty involved, and, in cases implicating the Reagan Tokes Law, the "maximum penalty" includes a stated minimum term of imprisonment and a maximum term of imprisonment.

### Mandatory License Suspension

{¶25} Next, the trial court failed to advise Hutsenpiller of the mandatory license suspension of two to ten years on the aggravated vehicular assault count. *See* R.C. 2903.08(B)(2); R.C. 4510.02(A)(3). "A mandatory license suspension is part of a defendant's maximum penalty. Thus, Crim.R. 11(C)(2)(a) requires that a defendant be advised regarding the potential maximum duration of a mandatory license suspension." (Citations omitted.) *State v. Thompson*, 2020-Ohio-211, ¶ 6 (2d Dist.); *State v. Spitalieri,* 1988 WL 38056, *4 (11th Dist. 1988) ("Crim.R. 11(C)(2) mandates that a court inform a defendant that he could lose his right to drive if he pleads guilty to any statute which itself provides for such a sanction.").

{¶26} Here, *the state* indicated that the maximum penalty for the aggravated vehicular assault count included a mandatory class three license suspension of two to ten years. However, "'[s]tatements from the prosecutor and defense counsel are not an adequate substitute for the trial judge's obligation to address the defendant 'personally' to ensure that he understands the maximum penalty he is facing.'" *See Amin*, 2023-Ohio-3761, ¶ 13 (11th Dist.), quoting *State v. Gonzalez*, 2019-Ohio-4882, ¶ 9 (9th Dist.). Thus, the trial court failed to comply with this aspect of the colloquy relative to the maximum penalty.

Case No. 2023-G-0041

**Post-Release Control**

{¶27} In addition, where post-release control is mandatory, it constitutes part of the maximum penalty for purposes of Crim.R. 11(C)(2)(a). *State v. Sarkozy*, 2008-Ohio-509 ("If the trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of post[-]release control, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause.").

{¶28} Applicable here, pursuant to R.C. 2929.14(D)(1) and 2967.28(B)(2), a court that imposes a non-life term of imprisonment for a second-degree felony must "include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment" for a period of "up to three years, but not less than eighteen months . . . ."

{¶29} However, as set forth above, the trial court stated, "So, I'm also required to inform you that if a prison sentence is imposed, you *may* be subject to post-release control for a period of up to two years at the discretion of the - - I'm sorry. It would be I think it would be three years." (Emphasis added.) Later in the transcript, the court asked the prosecutor, "Do you think we got the three years on the post-release control, correct?" The prosecutor replied, "That is correct, Judge. It's just it does have a mandatory minimum of 18 months on that as well."

{¶30} By its use of the term, "may," the trial court conveyed that post-release control is discretionary, and not mandatory. The prosecutor's later statement as to the minimum mandatory period of post-release control contradicted the trial court's prior indication that post-release control was discretionary. And, again, statements from the prosecutor are not an adequate substitute for the trial judge's obligation to personally

13

address the defendant and ensure his understanding of the maximum penalty. *See Amin*, 2023-Ohio-3761, at ¶ 13 (11th Dist.). There is no indication in the transcript that the trial court attempted to clarify the mandatory nature and term of post-release control, and at no time did the trial court attempt to ascertain Hutsenpiller's understanding on this issue.

**Ineligibility for Probation or for the Imposition of Community Control Sanctions**

{¶31} Next, the transcript contains no discussion of the mandatory nature of the prison term, nor does it contain any advisement that Hutsenpiller was therefore not eligible for probation or for the imposition of community control sanctions at sentencing. To the contrary, the trial court stated, "So, I'm also required to inform you that *if* a prison sentence is imposed, you may be subject to post-release control . . . ," thus conveying that appellant's conviction did not automatically carry a prison term. (Emphasis added.)

{¶32} Accordingly, the trial court failed to comply with the requirement of Crim.R. 11(C)(2)(a) that it notify Hutsenpiller of his ineligibility for probation or for the imposition of community control sanctions. *Compare State v. Miller*, 2014-Ohio-5706, ¶ 22 (11th Dist.) (where trial court failed to inform the appellant during the change-of-plea hearing that he was ineligible for community control sanctions based upon his conviction for rape, but expressly stated to him that his conviction dictated he must serve a prison term of at least three years, that reference substantially complied with the "community control sanctions" aspect of Crim.R. 11(C)(2)(a)).

{¶33} On this issue, the dissent again maintains that "Crim.R. 11 does not require a trial court to determine that a defendant understands the minimum penalty involved." Again, we do not hold otherwise. Instead, we conclude that the trial court failed to advise Hutsenpiller that he was "not eligible for probation or for the imposition of community

14

Case No. 2023-G-0041

control sanctions at the sentencing hearing" in accordance with Crim.R. 11(C)(2)(a). Nor did the court attempt to ascertain Hutsenpiller's understanding on this issue.

## Complete Failure to Comply

{¶34} For the reasons stated above, the trial court failed to comply with Crim.R. 11(C)(2)(a). Thus, we must determine whether the failures amounted to a "complete failure" to comply so as to excuse Hutsenpiller from demonstrating prejudice. *See Dangler*, 2020-Ohio-2765, at ¶ 14.

{¶35} We recognize that some of the deficiencies in the plea colloquy may not, in isolation, constitute a "complete failure" to comply. *See, e.g.*, *State v. Manyo*, 2023-Ohio-267, ¶ 27 (11th Dist.) (where trial court misinformed defendant regarding the length of the post-release control term and its mandatory nature, there did not exist a complete failure to comply); *State v. Straley*, 2019-Ohio-5206 (plurality) (where, during plea colloquy, court improperly advised defendant that his prison sentences were not mandatory, trial court did not wholly fail to comply with Crim.R. 11(C)(2)(a), and defendant was required to show prejudice), *accord State v. Burns*, 2023-Ohio-3121, ¶ 20 (11th Dist.). However, the extent and nature of the particular deficiencies in the plea colloquy in this case amounted to a "complete failure," excusing Hutsenpiller from demonstrating prejudice. In so holding, we place great emphasis on the lack of *any* dialogue between the court and Hutsenpiller during this portion of the plea colloquy from which the court could assess Hutsenpiller's understanding of the nonconstitutional rights he was waiving. Accordingly, Hutsenpiller's first assigned error has merit.

{¶36} In his second assigned error, Hutsenpiller argues:

15

{¶37} "Defendant-appellant was denied his right to effective assistance of counsel at his change of plea hearing."

{¶38} We do not reach the merits of Hutsenpiller's second assigned error, as it has been rendered moot by our disposition of his first assigned error. *See* App.R. 12(A)(1)(c).

{¶39} Therefore, the judgment of the trial court is reversed, Hutsenpiller's plea to the charges is vacated, and this matter is remanded to the trial court for further proceedings consistent with this decision.

ROBERT J. PATTON, J., concurs,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

_____

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶40} The trial court's plea colloquy did not fully comply with the non-constitutional requirements of Crim.R. 11(C)(2)(a). But, it was not a complete failure to comply with those provisions. Appellant has not demonstrated that the trial court's failure prejudiced him i.e., that he would not have pled as he did if the court had done it perfectly. Therefore, I would affirm.

{¶41} The transcript of the sentencing hearing shows the trial court did not provide any R.C. 2929.19(B)(2)(c) sentencing notifications. Although this issue was not raised by appellant nor addressed by the majority. It is not grounds to reverse because it is an issue of statutory, not constitutional proportion. Appellant has not demonstrated any prejudice, and more fundamentally, "'[a]s a general rule, appellate courts do not

16

assign errors for parties, do not make assumptions as to the portion of an entry an appellant may have intended to attack, and do not usurp a potential appellate strategy employed by an appellant.'" *State v. Ward*, 2024-Ohio-2038, ¶ 14 (11th Dist.), quoting *Brown v. Dayton*, 2012-Ohio-3493, ¶ 24 (2d Dist.).

{¶42} At the plea hearing, the trial court advised appellant of the "maximum possible penalties that could be imposed on you for these." The court said that for Count One, "the maximum fixed term would be an 8 year prison sentence with the possibility of an indefinite term of up to 12 years." The trial court explained the potential jail sentence and fines for the OVI count and Driving Under Suspension count. After addressing appellant, the trial court asked if there was anything to add and the State added penalty details about the maximum fines and mandatory license suspensions. The trial court thanked the State "for the clarification." The trial court also informed appellant he would be subject to post-release control for a period of up to three years and informed him of the consequences for violating a post-release control sanction.

{¶43} Appellant's first assignment of error argues that his change of plea to guilty was not made knowingly, intelligently, or voluntarily because the trial court completely failed to inform him of the maximum penalty involved in his plea. He argues the trial court [1] did not mention "anything about Reagan Tokes requirements"; [2] did "not properly inform [appellant] about post-release control; [3] never mention[ed] anything about judicial release; and [4] never mention[ed] anything about rights to appeal."

{¶44} Appellant's argument rests entirely on this court's finding that the trial court completely failed to comply with the non-constitutional requirements set forth in Crim.R. 11(C)(2)(a). Appellant's briefing does not argue that he was prejudiced and, during oral

17

argument, appellant's counsel offered that no one could know whether or not appellant was indeed prejudiced.

**{¶45} 1. Reagan Tokes Notifications:**

{¶46} There is no denying that the trial court's plea hearing was a bit sloppy. This includes the trial court's explanation of the Reagan Tokes Law. But, sloppiness is not the same as a complete failure to comply with Crim.R. 11(C)(2)(a).

{¶47} The Reagan Tokes Law reinstituted "indefinite sentencing" in Ohio for certain crimes. A sentence under the statute is indefinite. It is comprised of two parts – a minimum and a maximum. The minimum is within a range. The maximum is up to an additional 50% of the minimum imposed.

{¶48} The trial court informed appellant that his maximum "fixed term" was an eight-year prison sentence. The court said there was a "possibility of an indefinite term of up to 12 years." This was an accurate statement of the possible maximum indefinite sentence appellant faced.

{¶49} Nevertheless, the majority takes issue with the trial court's not explaining that if he sentenced appellant to a lesser term, that the indefinite prison term imposed under the Reagan Tokes Law would be an additional "fifty per cent of that term." However, such an explanation is unnecessary to ensure a defendant understands the maximum penalty involved under Crim.R. 11(C)(2)(a). Crim.R. 11 "does not require the trial court to determine whether the defendant is aware of every lesser penalty that could be imposed." *State v. Liles*, 2019-Ohio-3029, ¶ 19 (3rd Dist.). Indeed, the Reagan Tokes Law does describe how a sentencing court must calculate an offender's presumptive minimum prison term, triggering events that may extend that presumptive minimum sentence, and

18

Case No. 2023-G-0041

other details.  However, these details are not required in order to obtain a knowing, intelligent, and voluntary plea under Crim.R. 11(C)(2)(a).

{¶50}  I agree that the trial court did not fully comply with the non-constitutional requirements set forth in Crim.R. 11(C)(2)(a).  The trial court inappropriately relied on the prosecutor to fill in certain gaps in the court's explanation, such as the license suspensions for each count and the maximum fine.  *See State v. Bakos*, 2023-Ohio-2827, ¶ 23 (11th Dist.) (a mandatory license suspension is part of the maximum penalty and implicates the "maximum penalty involved" requirements of Crim.R. 11(C)(2)(a).).  But this was a deficiency, not a complete failure.

{¶51}  In support of his Reagan Tokes arguments, appellant relies on *State v. Amin*, 2023-Ohio-3761 (11th Dist.).  In *Amin*, the trial court said "normally I would advise you of the maximum penalties but they've been set forth in the plea agreement itself.  I'm going to ask [the prosecutor] do you have an opinion whether that's sufficient to be able to not repeat them all."  *Id.* at ¶ 10.

{¶52}  We found "the trial court's advisement regarding the maximum penalty was wholly deficient inasmuch as it communicated contradictory information to Amin without any effort to explain the significance of definite and indefinite sentencing under the Reagan Tokes Law."  *Id.* at ¶ 12.  We also said that it was improper for the trial court to rely on the prosecutor's deficient statement of the maximum penalty.  *Id.* at ¶ 13.

{¶53}  Even though Amin said that she understood the prosecutor's advisement, it was "not at all clear that her 'understanding' properly reflected the operation of the Reagan Tokes Law" and the court failed to use or explain the terms "stated minimum

19

term" and "maximum prison term." *Id.*, citing R.C. 2929.14(A)(2)(a) and R.C. 2929,144(B)(1).

{¶54} A guilty plea is not made knowingly, intelligently, and voluntarily where the trial court completely fails to advise the defendant of the indefinite, maximum sentence he or she will be subject to under the Reagan Tokes Law. *State v. Jackson,* 2022-Ohio-3449, ¶ 7 (1st Dist.); *State v. Fikes,* 2021-Ohio-2597, ¶ 11-13 (1st Dist.).

{¶55} This case is unlike *Amin.* In *Amin*, the trial court did not personally address the defendant at all. The court said that the plea agreement covered the maximum penalties and then delegated the entire plea colloquy to the prosecutor.

{¶56} That is not what happened here. This was not a complete failure to advise appellant of the maximum term of incarceration involved as there plainly was in *Amin*. The court personally addressed appellant and stated that the "fixed term would be an 8 year prison sentence with the possibility of an indefinite term of up to 12 years." The court similarly informed appellant of the maximum term of incarceration for the two misdemeanor counts. The trial court did personally address appellant and provided information about the maximum penalty involved in his offenses.

{¶57} However, the prosecutor, not the court, later explained the maximum fines and associated license suspensions for each of the counts. In *Amin,* the information the prosecutor gave was incorrect. Here, the prosecutor correctly added information the trial court had omitted. The trial court thanked the prosecutor for the clarification.

{¶58} Further, it does not follow that a trial court, as part of ensuring that a defendant is aware of the maximum penalty involved during a Crim.R. 11 plea colloquy, must exhaustively notify the defendant of the machinations of the Reagan Tokes Law. To

20

be sure, the trial court must, at least, inform the appellant of the maximum penalty involved. If this maximum penalty is subject to indefinite sentencing under the Reagan Tokes Law, then the trial court must notify the defendant of the minimum and maximum components of the indefinite sentence. R.C. 2929.144(B) provides that "the maximum prison term shall be equal to the minimum term imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code plus fifty per cent of that term."

{¶59} Here, the trial court informed appellant that his maximum sentence would be eight years "with the possibility of an indefinite term of up to 12 years." This was an accurate statement of the possible maximum definite and indefinite sentence appellant faced. Again, this was not a complete failure.

## 2. Postrelease Control:

{¶60} Appellant also argues that the trial court failed to properly inform him about postrelease control. At the hearing, the trial court informed appellant that he would be subject to a period of three years' postrelease control and explained that postrelease control is a period of supervision after release from imprisonment. Further, the court explained the possible consequences for violations of postrelease control. This explanation does not constitute a complete failure to inform appellant of the maximum penalty involved in his plea. Although the trial court said appellant "may" be subject to postrelease control, the prosecutor did state that there was "a mandatory minimum of 18 months on that as well."

{¶61} This case is unlike *State v. Sarkozy*, 2008-Ohio-509, where the Ohio Supreme Court held that a failure to mention postrelease control where the defendant

was subject to a mandatory five years of postrelease control was a complete failure to comply with the requirements of Crim.R. 11. *Id.* at ¶ 22.

{¶62} Further, *Sarkozy* was decided prior to the Supreme Court's decision in *Dangler*. Appellate courts, applying the old substantial compliance standard, have concluded that "even in cases where the court has mistakenly or inadvertently implied that a prison term might be imposed upon entry of the guilty plea, rather than informing the defendant directly that a mandatory prison term will be imposed, we find that substantial compliance with Crim.R. 11 may still be found." *State v. Abuhashish*, 2008-Ohio-3849, ¶ 35 (6th Dist.).

{¶63} And under the current *Dangler* standard, this court ruled in *State v. Manyo*, 2023-Ohio-267 (11th Dist.), that misinforming a defendant that postrelease control was discretionary rather than mandatory, was a "failure to comply fully with the dictates of Rule 11," but not a complete failure. *Id.* at ¶ 25. We held there was no arguable merit in the position that the plea was thereby invalid" because the appellant was unable to demonstrate prejudice resulting from the trial court's misstatement. *Id.* at ¶ 28. "[T]here is no colorable basis on which to argue that Manyo would not have entered his plea had the trial court properly advised him regarding postrelease control at the plea colloquy.").

{¶64} The same logic should apply here. The trial court's misstatement (with or without the prosecutor's correction) was not a complete failure to comply with the nonconstitutional requirements set forth in Crim.R. 11. Appellant has not even articulated the possibility of prejudice, much less demonstrated it. There is no basis to invalidate appellant's plea.

22

### 3. Judicial Release:

{¶65} Appellant also argues that the trial court failed to mention judicial release during his plea hearing. While it is true that a "trial court may not misinform a defendant regarding his or her eligibility for judicial release, Crim.R. 11(C) does not place a specific burden on the trial court to inform a defendant of his or her eligibility for judicial release." *State v. Brownlee,* 2023-Ohio-1090, ¶ 24 (11th Dist.). Appellant has not suggested that the trial court misinformed him regarding his judicial release eligibility, and it was not incumbent on the trial court to address judicial release during the plea hearing.

### 4. Notice of Appellate Rights:

{¶66} A trial court has an "obligation to advise a defendant of his right to appeal," however, that obligation only "becomes operative 'after imposing sentence,' and has no bearing on the validity of a guilty plea." *State v. Nicholas*, 2010-Ohio-1451, ¶ 26 (11th Dist.), quoting *State v. Atkinsom,* 2006-Ohio-5806, ¶ 22 (9th Dist.). While appellant did not timely file the instant appeal, we granted leave to file a delayed appeal. Thus, regardless of whether the trial court committed error by failing to inform appellant of his appellate rights, appellant has failed to demonstrate how that failure has prejudiced him. We find no reversible error in this instance. *See State v. Middleton*, 2005-Ohio-681, ¶ 25 (12th Dist.) (finding no reversible error where appellant failed to show prejudice from trial court's error with regard to Crim.R. 32(B)(2) and (3)).

### Mandatory Minimum Sentence

{¶67} Although not raised by appellant directly in his merit brief, the majority finds the trial court failed to inform appellant that he was subject to a mandatory prison term. However, Crim.R. 11 does not require a trial court to determine that a defendant

understands the minimum penalty involved. *State v. Liles*, 2019-Ohio-3029, ¶ 19 (3rd Dist.) (Crim.R. 11(C)(2)(a) "does not require the trial court to determine whether the defendant is aware of every lesser penalty that could be imposed."). Further, where a trial court fails to inform a defendant of a mandatory sentence, such a failure is non-constitutional in nature. Thus, the defendant must demonstrate that this failure resulted in prejudice (*State v. Burns*, 2023-Ohio-3121, ¶ 21 (11th Dist.)). Appellant has not raised this issue, has not asserted prejudice, and the trial court's failure was non-constitutional.

{¶68} For the foregoing reasons, I respectfully dissent.

.

24

Case No. 2023-G-0041